IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| IN RE: | ) | Consolidated at |
| | ) | CASE NO. 25-01682-5-JNC |
| HEADWAY WORKFORCE | ) | |
| SOLUTIONS, INC., *et al.*[1], | ) | CHAPTER 11 |
| | ) | |
| DEBTORS. | ) | JUDGE JOSEPH N. CALLOWAY |

**AFFIDAVIT OF BRENDAN FLOOD IN SUPPORT OF THE DEBTORS' EXPEDITED MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO OBTAIN POST PETITION FINANCING, (II) GRANTING SENIOR LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (III) AUTHORIZING USE OF CASH COLLATERAL, (IV) GRANTING LIMITED RELIEF FROM THE AUTOMATIC STAY, AND (V) GRANTING RELATED RELIEF**

Brendan Flood declares and states, under penalty of perjury pursuant to 28 U.S.C. § 1746 that:

INTRODUCTION

1. I am more than 18 years old and am competent to testify to the matters set forth below.

2. I am the CEO of Headway Workforce Solutions, Inc.; Staffing 360 Solutions, Inc.; Monroe Staffing Services, LLC; Key Resources, Inc.; and Lighthouse Placement Services, Inc. (each a "Debtor" and collectively the "Debtors"), and in this capacity, I am familiar with each Debtors business and financial affairs as well as the business and financial affairs of all of the affiliated entities. I have been the CEO of the Debtors since January 2014.

3. I submit this declaration in connection with the Motion (the "Motion") Pursuant to 11 U.S.C. §§105, 361, 362, 363, 364 and 507 and Fed. R. Bankr. P. 2002, 4001 and 9014 for Entry

---

[1] The Debtors in this chapter 11 case, together with the last four digits of the Debtors' federal tax identification number, are: Staffing 360 Solutions, Inc. (0859), Monroe Staffing Services, LLC (1204), Lighthouse Placement Services, Inc. (8093), Headway Workforce Solutions, Inc. (4871), and Key Resource, Inc. (9495).

of Interim and Final Orders (1) authorizing the Debtors to obtain first priority and priming post-petition financing (the "DIP Financing"), (2) granting senior liens and super-priority administrative claims, (3) authorizing use of cash collateral, the extent applicable (4) granting limited relief from the automatic stay, (5) scheduling a final hearing, and (6) granting such other related relief as agreed to by and among the Debtors and Noor Strategies, Inc. and/or its affiliates (collectively, the "DIP Lender") (the "DIP Declaration").

### A. The MidCap Loan

4.  The Debtors and MidCap Funding IV Trust, a Delaware statutory trust, as successor-by-assignment to MidCap Funding X Trust ("MidCap") are parties to that certain Credit and Security Agreement dated as of April 8, 2015 (the "MidCap Loan" and, together with all schedules and exhibits attached thereto and all amendments, agreements, documents, instruments and/or amendments executed and delivered in connection therewith, collectively, the "MidCap Loan Documents"). As of the Petition Date, the outstanding amount owed under the MidCap Loan is estimated to be an amount up to $9,000,000.00.

### B. The Jackson Loan

5.  The Debtors and Jackson Investment Group, LLC ("Jackson") are parties to that certain Senior Secured Promissory Note dated August 29, 2023 (the "Jackson Loan" and, together with all schedules and exhibits attached thereto and all amendments, agreements, documents, instruments and/or amendments executed and delivered in connection therewith, collectively, the "Jackson Loan Documents"). As of the Petition Date, the outstanding principal amount owed under the Jackson Loan is approximately $11,666,955.43.

### C. The Bridge Loan

6. The Debtors and Noor Staffing Group, LLC ("Noor") are parties to that certain Revolving Loan Promissory Note, dated February 23, 2025, Continuing Security Agreement effective as of February 23, 2025 between Borrowers and all documents executed in connection therewith (collectively, the "Bridge Loan Documents").

7. The Debtors' obligations arising under, or in connection with, the Bridge Loan Documents are secured by a lien in all of the Debtors' accounts receivables related to those certain "360 Contracts" as of March 10, 2025 (collectively, the "Accounts") as more particularly described and set forth in Schedule A to that certain Continuing Security Agreement effective February 23, 2025. Noor's liens in the Accounts were perfected by the filing of Uniform Commercial Code Financing Statements. As of the Petition Date, the outstanding principal amount under the Bridge Loan is approximately $766,000.

D. *Debtors' Need for DIP Financing*

8. The Debtors' operations were previously funded by MidCap.

9. On or about March 7, 2025, MidCap informed the Debtors that it would no longer advance the funds needed by the Debtors for payroll and operations and swept all or substantially all of the Debtors' operating funds.

10. On or about March 19, 2025, the Debtors, MidCap and Noor entered into a Memorandum of Understanding ("MOU") whereby Noor agreed to, *inter alia*, to advance the certain funds to the Debtors to employ and cover the costs and expense of the Debtors' employees and other mutually agreed upon operational costs (the "Operating Funds").

11. Under the MOU, MidCap agreed to reimburse Noor for Operating Funds in the amount of $2,744,900 (the "Reimbursement Obligations").

12. Since the execution of the MOU and as a result of the Operating Funds provided by Noor, the Debtors have been able to continue their operations, service their customers, avoid material breaches of contract, and thereby pay down the MidCap Loan.

13. From the date of the execution of the MOU through May 9, 2025, MidCap has collected more than $11,000,000 of the Debtors' accounts receivable.

14. Noor's affiliate, the DIP Lender, has agreed make a DIP loan to the Debtors in order to provide necessary capital to the Debtors to fund their post-petition operations.

   E. *Debtors' efforts to obtain DIP financing without a Priming Lien*

15. Leading up to Debtors' filing the Chapter 11 cases, Debtors unsuccessfully explored alternatives and engaged in negotiations in order to obtain additional financing and liquidity.

16. The Debtors were not able to obtain this financing on an unsecured basis without agreeing to grant a first priority priming lien on the estates' post-petition assets.

17. Debtors engaged in good faith, arm's-length negotiations with the DIP Lender, with the result of these negotiations being the DIP Financing and the form of the proposed Interim Order.

18. I have reviewed the Motion filed by the Debtors and the statements therein. The relief sought in the Motion is necessary and critical to the finding of these Chapter 11 cases.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information and belief.

            */s/ Brendan Flood*
            Brendan Flood, CEO