EXHIBIT 2

## Memorandum of Understanding

This memorandum of understanding (the "**MOU**") outlines, to the extent set forth herein, the general framework for an agreement for the (i) orderly collection and maximization of accounts receivable of **MONROE STAFFING SERVICES, LLC**, a Delaware limited liability company, **FARO RECRUITMENT AMERICA, INC.**, a New York corporation, **LIGHTHOUSE PLACEMENT SERVICES, INC.**, a Massachusetts corporation, **KEY RESOURCES, INC.**, a North Carolina corporation, **HEADWAY WORKFORCE SOLUTIONS, INC.**, a Delaware corporation, **HEADWAY EMPLOYER SERVICES LLC**, a Delaware limited liability company, **HEADWAY PAYROLL SOLUTIONS, LLC**, a Delaware limited liability company, **HEADWAY HR SOLUTIONS, INC.**, a New York corporation, and **NC PEO HOLDINGS, LLC**, a Delaware limited liability company (each of the foregoing Persons being referred to herein individually as a "**Borrower**", and collectively as "**Borrowers**"), **STAFFING 360 SOLUTIONS, INC.**, a Delaware corporation (as "**Parent**" and collectively with the Borrowers, the "**Staffing Parties**"), assigned and pledged to **MIDCAP FUNDING IV TRUST,** a Delaware statutory trust, as successor-by-assignment to MidCap Funding X Trust (as Agent for Lenders, "**Agent**", and individually, as a Lender) and (ii) reimbursement of certain obligations incurred by **NOOR STAFFING GROUP** and its affiliates (collectively, "**NSG**"). In this MOU, the Staffing Parties, Agent and NSG are referred to collectively as the "**Parties**" and each individually a "**Party**." Staffing Parties, Agent and Lenders are party to that certain Credit and Security Agreement dated as of April 8, 2015 (as amended, modified, supplemented, and restated) (the "**Credit Agreement**" and the Credit Agreement with all other loan documents related to the Credit Agreement, the "**Financing Documents**"). Capitalized terms not defined herein have the meanings given to them in the Financing Documents.

| | |
|---|---|
| **Employment.** | NSG agrees to employ and/or cover the cost and expense of the employees and other mutually agreed upon operational costs of the Staffing Parties effective 12:01 a.m., Sunday, March 9, 2025. NSG assumes the unpaid employee obligations of the Staffing Parties and pays to such employees payroll that employees did not receive for the weeks (i) February 23, 2025 through March 1, 2025 ("**First Payroll**") and (ii) March 2, 2025 through March 8, 2025 ("**Second Payroll**" and collectively with the First Payroll, the "**Old Payroll**") plus all future payroll obligations ("**Future Payroll**") as the case may be under the NSG Contracts (defined below). |
| **NSG Contracts.** | To the extent Staffing Parties are unable to maintain existing contracts in good standing, NSG enters into new contracts with customers of the Staffing Parties effective on or after March 10, 2025 under substantially the same terms that exist under current contracts between customers and the Staffing Parties, and NSG shall service those contracts going forward (the "**NSG Contracts**"). |
| **Accounts Receivable.** | NSG is entitled to all right, title and interest in accounts receivable generated under the NSG Contracts for services provided on or after |

March 10, 2025 (the "**NSG AR**"). Agent, for itself and for the benefit of the Lenders, is entitled to all accounts receivable arising under and related to all contracts of the Staffing Parties (the "**Staffing AR**"), in accordance with its first priority lien on such assets and other assets under the Financing Documents. All Staffing AR shall continue to be paid under the lockbox arrangement designated under the Financing Documents (the "**Lockbox**") or as designated by Agent in writing as set forth in **Exhibit A** attached hereto (the "**Agent Instructions**"). NSG shall facilitate collections of the Staffing AR and customer payments to the Lockbox or in accordance with the Agent Instructions in good faith and in a commercially reasonable manner using the same standards as with respect to other transactions retained for its own accounts and related collections, provided, however, the Staffing Parties and NSG will not, directly or indirectly, (a) direct an account debtor obligated under Staffing AR to divert any payments from the Lockbox or to pay contrary to the Agent Instructions, (b) take, permit, approve or suffer to occur any action that would cause any failure to comply fully with the lockbox and cash management procedures and requirements set forth in the Credit Agreement, (c) otherwise impede or interfere with the collection and payment of the Staffing AR financed by Lenders, or (d) knowingly and intentionally compromise, offset, recoup, adjust, or otherwise impair any Staffing AR unless otherwise approved in writing by Agent (the "**Collection Covenants**"). If there are proposed adjustments to Staffing AR resulting from complaints over the transition of the customers from the Staffing Parties to NSG or any attempts to invoice and collect the Old Payroll under the NSG Contracts, Agent may offset such adjustments against the Reimbursement Obligation (defined below).

NSG, Habib Noor, and the Staffing Parties (the "**Indemnifying Parties**") shall indemnify and save Agent and Lenders free and harmless from, and guaranty payment of, any actual loss that Agent or any Lender may sustain as a result of any breach of the Collection Covenants. The Indemnifying Parties further hereby agree to pay to Agent, upon demand, an amount equal to any cash misdirected from the Lockbox, any funds moved from any deposit account required to be maintained by the Staffing Parties pursuant to the Financing Documents without prior written authorization of Agent, and any amounts withdrawn from the accounts or paid out to any person in violation of the provisions of the Financing Documents and any similar actions of NSG, Staffing Parties and their respective officers, directors or employees. For purposes of clarity and avoidance of doubt, the indemnity contained herein is limited to the specific acts contained in this MOU and for no other purpose, acts, actions or inactions.

|  |  |
|---|---|
|  | To the extent (i) any NSG AR may be delivered to Agent or (ii) Staffing AR may be delivered to NSG, the Parties agree to work in good faith to reconcile and return such amounts to the proper NSG or Agent Party, as the case may be, promptly. |
| **Reimbursement**. | Agent shall reimburse NSG for its payment of the Old Payroll related to payroll for employees that are billed to customers through collections of the Staffing AR and reasonable payroll expenses of Staffing Parties as approved by Agent in writing as follows (the "**Reimbursement Obligation**"): for the Old Payroll related to payroll for employees that are billed to customers (in the amount of $891,000 plus $200,000 for the First Payroll and $1,552,000 plus $54,000 for the Second Payroll) and $47,900 for payroll expenses of Staffing Parties ("**Staffing Payroll**"), Agent shall reimburse NSG the actual expenditure of the Old Payroll and Staffing Payroll within a reasonable time after the invoices that include such payroll expense are generated, billed and collected from customers and paid to Agent and with respect to the Staffing Payroll those expenses have been accepted by Agent in writing; provided, however, the full amount of the Old Payroll and Staffing Payroll shall be withheld and reserved by Agent until a reasonable time after the principal due under the Financing Documents in the amount of $11,019,952.00 (as of Friday, March 14, 2025), plus $300,000 in costs and expenses, is collected and indefeasibly paid to Agent and not subject to offset, turnover or other claims of third parties. Agent shall provide weekly collections reporting to NSG and the Staffing Parties that reflects a reconciliation of the amounts collected during the prior week on the invoices and paid towards the Agent's principal due.<br><br>The Reimbursement Obligation shall be deemed a protective reimbursement to NSG of costs and expenses incurred in accordance with Section 11.14 of the Financing Documents to preserve or protect the Staffing AR and enhance the likelihood of, or maximize the amount of, repayment of the Obligations under the Financing Documents and shall become part of the Obligations.<br><br>Agent and Lenders reserve all rights and remedies under the terms of the Financing Documents, and nothing shall be deemed a waiver of such rights and remedies. |
| **Collection of Future Payrolls.** | The Parties agree that NSG is permitted to invoice and collect on all Future Payroll; i.e. the period commencing on March 10, 2025. Agent and Lenders agree to forbear on enforcing their security interests and other rights associated with the Future Payrolls for an |

initial period of 120 days which may be extended by agreement of the Parties. The Parties agree that upon repayment of the full amount of the Obligations to Agent and Lenders, then any and all remaining Staffing AR shall be remitted to the Staffing Parties in accordance with applicable law, the terms of the Credit Agreement and Financing Documents, including the Intercreditor Agreement.

**Cooperation**.

The Parties agree to work in good faith and in cooperation to effectuate the terms outlined herein with the goal of paying employees, providing vendors of Staffing Parties alternatives to avoid business interruption and minimize creditor offset claims, and maximizing the value of the assets of the Staffing Parties for the benefit of creditors and the Staffing Parties. Staffing Parties, as required by the Financing Documents, and NSG shall provide Agent, and its agents including MCA Financial Group, full and unfettered access to the books and records of the Staffing Parties and access to staff support, to collect the Staffing AR and effectuate the purpose of this agreement, including without limitation to access to software and such other information to permit Agent to monitor, reconcile and confirm daily collections and postings of collections of Staffing AR.

As a condition precedent to signing this MOU, the Staffing Parties and/or NSG shall have provided Agent and MCA Financial Group the contact information for a designated employee of the Staffing Parties and/or NSG who will communicate openly and directly with Agent and MCA Financial Group regarding daily billing and collections. Agent and MCA Financial Group shall pay for the costs and expenses of such designated employee. To the extent that the Staffing Parties are able to provide Agent with read-only and restricted access to the Staffing Parties' billing software Avionte to review invoice and collections data only and without access to any other information contained on such software, then in that instance Staffing Parties will provide such access.

Until or unless NSG enters into a transaction to purchase Staffing Parties' assets, NSG will use commercially reasonable efforts to collect and deliver to Staffing Parties any computers, equipment, software or other assets in NSG's possession or control.

**Governing Law**.

The terms of this MOU and the definitive documents shall be governed by and construed in accordance with the laws of the state of Maryland.

**Counterparts**.

This MOU may be executed in one or more counterparts, each of which shall be deemed an original for all purposes, and all of which

together shall constitute one and the same agreement. Facsimile, portable document format (a/k/a ".PDF") and any other electronic signature within the meaning of the Uniform Electronic Transactions Act, as amended (or any similar state law), on any counterpart hereof shall be deemed to be a true and legally binding signature with the same force and effect as an original.

Notwithstanding the foregoing, the parties acknowledge that this MOU is an expression of the current understanding and intention of the Parties regarding the terms set forth herein but remain subject to definitive documentation.

**Signature Pages to Memorandum of Understanding**

| | |
|---|---|
| **AGENT:** | **MIDCAP FUNDING IV TRUST** |
| | By:    Apollo Capital Management, L.P., |
| |        its investment manager |
| | By:    Apollo Capital Management GP, LLC, |
| |        its general partner |
| | By: ___/s/_____(SEAL) |
| | Name:  Maurice Amsellem |
| | Title:   Authorized Signatory |
| **LENDER:** | **MIDCAP FUNDING IV TRUST** |
| | By:    Apollo Capital Management, L.P., |
| |        its investment manager |
| | By:    Apollo Capital Management GP, LLC, |
| |        its general partner |
| | By: ___/s/_____(SEAL) |
| | Name:  Maurice Amsellem |
| | Title:   Authorized Signatory |

**NOOR STAFFING GROUP**
**For itself and its affiliates**

**NOOR STAFFING GROUP**

By: _____(SEAL)
Name:  Habib Noor
Title:   Authorized Signatory

**HABIB NOOR, Individually:**

_____(SEAL)
Habib Noor

**Signature Pages to Memorandum of Understanding**

**AGENT:**                              **MIDCAP FUNDING IV TRUST**

                 By:    Apollo Capital Management, L.P.,
                         its investment manager

                 By:    Apollo Capital Management GP, LLC,
                         its general partner

                 By: _____(SEAL)
                 Name:  Maurice Amsellem
                 Title:   Authorized Signatory

**LENDER:**                             **MIDCAP FUNDING IV TRUST**

                 By:    Apollo Capital Management, L.P.,
                         its investment manager

                 By:    Apollo Capital Management GP, LLC,
                         its general partner

                 By: _____(SEAL)
                 Name:  Maurice Amsellem
                 Title:   Authorized Signatory

**NOOR STAFFING GROUP**
**For itself and its affiliates**                **NOOR STAFFING GROUP**

                 By: _____(SEAL)
                 Name:  Habib Noor
                 Title:   Authorized Signatory

**HABIB NOOR, Individually:**

                 _____(SEAL)
                 Habib Noor

**STAFFING PARTIES:**

**MONROE STAFFING SERVICES, LLC**, a Delaware limited liability company

By: _____ (Seal)
Name: Brendan Flood
Title:   Chairman and Chief Executive Officer

**LIGHTHOUSE PLACEMENT SERVICES, INC.**, a Massachusetts corporation

By: _____ (Seal)
Name: Brendan Flood
Title:   Chief Executive Officer

**FARO RECRUITMENT AMERICA, INC.**, a New York corporation

By: _____ (Seal)
Name: Brendan Flood
Title:   Chief Executive Officer

**HEADWAY WORKFORCE SOLUTIONS, INC.**, a Delaware corporation

By: _____ (Seal)
Name: Brendan Flood
Title:   Chief Executive Officer

**KEY RESOURCES, INC.**, a North Carolina corporation

By: _____ (Seal)
Name: Brendan Flood
Title:   Chief Executive Officer

**HEADWAY PAYROLL SOLUTIONS, LLC**, a Delaware limited liability company

By: _____ (Seal)
Name: Brendan Flood
Title:   Chief Executive Officer

**HEADWAY EMPLOYER SERVICES LLC**, a Delaware limited liability company

By: _____ (Seal)
Name: Brendan Flood
Title:   Chief Executive Officer

**HEADWAY HR SOLUTIONS, INC.**, a New York corporation

By: _____/s/ Brendan Flood_____ (Seal)
Name: Brendan Flood
Title:   Chief Executive Officer

**NC PEO HOLDINGS, LLC,** a Delaware limited liability company

By: _____/s/ Brendan Flood_____ (Seal)
Name: Brendan Flood
Title:   Chief Executive Officer

**PARENT:**

**STAFFING 360 SOLUTIONS, INC.,** a Delaware corporation

By: _____/s/ Brendan Flood_____ (Seal)
Name:  Brendan Flood
Title:    Chief Executive Officer

## **EXHIBIT A**
### (Agent Instructions)

**For payments by check, make payable to "MidCap Funding IV Trust" and remit to:**

Midcap Funding IV Trust
c/o MidCap Financial Services, LLC, as servicer
7255 Woodmont Ave., Suite 300
Bethesda, MD 20814
Attn: Staffing 360 Portfolio Manager

**For payments by wire:**

| | |
|---|---|
| Bank: | Wells Fargo Bank, N.A. (McLean, VA) |
| ABA#: | 121-000-248 |
| Account Name: | MidCap Funding IV Trust |
| Account #: | 2000036282803 |
| Attention: | Staffing360 transaction |