EXHIBIT 3

# ADMINISTRATIVE SERVICES AGREEMENT

This Administrative Services Agreement (this "Agreement") is entered into effective as of February 23, 2025 (the "Effective Date"), by and between the following (each a "Party" and, collectively, the "Parties"): NOOR STAFFING GROUP, LLC, ("Noor") and STAFFING 360 SOLUTIONS, INC., MONROE STAFFING SERVICES, LLC, LIGHTHOUSE PLACEMENT SERVICES, INC., FARO RECRUITMENT AMERICA, INC., HEADWAY WORKFORCE SOLUTIONS, INC., KEY RESOURCE, INC., HEADWAY PAYROLL SOLUTIONS, LLC, HEADWAY EMPLOYER SERVICES, LLC, HEADWAY HR SOLUTIONS, INC., and NC PEO HOLDINGS, LLC (collectively, "Staffing 360").

**Recitals**

A. Staffing 360 is a staffing agency that is party to certain contracts with their customers (collectively, the "360 Contracts"). Staffing 360 was previously funded by Midcap Funding IV Trust, a Delaware statutory trust, as successor-by-assignment to MidCap Funding X Trust (the "Lender").

B. On or about March 7, 2025, the Lender informed Staffing 360 that it would no longer advance the funds needed by Staffing 360 for payroll and operations and swept all or substantially all of Staffing 360's operating funds. Staffing 360 (and its related entities set forth below) became unable to service its customers and related employees under the 360 Contracts.

C. Staffing 360 is at risk of damages due to material breach of its obligations owed to their customers and related employees. To mitigate its potential damages caused by Lender's actions, Staffing 360 required an immediate infusion of cash to maintain its relationship with its customers and employees subject to the 360 Contracts.

D. On or about March 19, 2025, the Lender, Noor, and Staffing 360 entered into that certain Memorandum of Understanding (the "MOU").

E. Noor is willing and able to perform services for Staffing 360 as described herein (the "Services") on the terms and conditions set forth herein by drawing on its own resources as well as those available from others.

F. In order to effectuate the provision of its Services to Staffing 360, Noor is willing to, under the terms and conditions set forth herein, lend money to Staffing 360 and/or directly pay for certain costs and expenses of Staffing 360. Any and all funds advanced or otherwise loaned to Staffing 360, directly or indirectly, pursuant to this Agreement or the MOU, shall in the aggregate be referred to as the "Bridge Loan."

G. Noor, by way of this Agreement, is expressly not (i) assuming any liabilities of Staffing 360; (ii) purchasing or otherwise acquiring any equity in Staffing 360; (iii) purchasing any assets of Staffing 360; or (iv) merging with Staffing 360.

H.  Commencing on March 10, 2025, Staffing 360 has requested and permitted Noor to service its existing customers that it can no longer service and Noor has agreed to use its best efforts to service and administer those contracts. To the extent Staffing 360 is in default of or is unable to maintain contractual relations with its customers, then Noor shall be permitted to enter into new contracts with those customers under substantially similar terms as those customers had agreed to with Staffing 360 (the "New Contracts").

THE PARTIES, INTENDING TO BE LEGALLY BOUND, AGREE AS FOLLOWS:

1.  <u>Engagement of Noor</u>. Staffing 360 hereby engages Noor to perform the Services and funding described herein, as agreed upon with Staffing 360 during the term of this Agreement, and Noor agrees to be so engaged. The Parties agree that this Agreement may be reviewed, updated, and revised as agreed from time to time. Noor will have the sole responsibility for the performance of the Services and may designate which of its personnel will perform each of the Services, or engage other Persons to assist it in performing the Services subject to the terms of this entire Agreement. To enable Noor to carry out its functions under this Agreement, Staffing 360 will provide Noor with all such information as Noor may reasonably request from time to time.

2.  <u>Conduct of Parties</u>. Noor and Staffing 360 will abide by the terms of this Agreement in a consistent and timely manner and with the appropriate diligence during the term of this Agreement. The Parties will make all reasonable efforts to meet their obligations under this Agreement. The Parties will conduct their activities in a manner that will reflect favorably on the other and will not engage in any activity likely to bring the other party into dispute.

3.  <u>Services</u>.

(a)  The Services will be provided on a continuing or recurrent basis. No further order or similar statement of work is required from Staffing 360 for Noor to perform recurrent Services agreed to by all Parties.

(b)  The Parties agree that as part of the Services provided, Noor shall facilitate and assist with the collection of the Staffing AR, as defined in the MOU.

(c)  Staffing 360 may request periodic changes to these Services or request further Services on a case-by-case basis, subject to the agreement of Noor to provide such Services. Staffing 360 will at all times maintain control to alter and adjust its requirements for Services in order for Staffing 360 to manage its business effectively. Staffing 360 will provide reasonable notice of such changes to Noor with the opportunity to assess if additional costs will be incurred as a result of such changes. The Parties must mutually agree in writing on the altered or adjusted scope of the Services and costs.

4.  <u>Bridge Loan and Budget.</u>

(a)  The Bridge Loan shall include the following:

(i)  all amounts advanced to Staffing 360 to cover costs associated with unpaid payroll obligations not otherwise paid to Noor pursuant to the

2

        Reimbursement Obligation under the MOU, related costs, and ordinary expenses beginning as of February 23, 2025 as set forth in Schedule A attached hereto and incorporated herein;

  (ii)    All additional amounts advanced under the terms of this Agreement pursuant to the Budget, as defined herein below, or as otherwise agreed to in writing by the Parties; and

  (iii)   All amounts included as the Reimbursement Obligation, as defined in the MOU that are not otherwise reimbursed by the Lender.

(b)    <u>Budget</u>.

  (i)    <u>Agreement of Parties</u>. The Parties shall agree on the Budget attached hereto and incorporated herein as Schedule B. Noor agrees to advance sufficient funds to continue to cover expenses during the term of this Agreement, consistent with the Budget. Noor shall fund Staffing 360 every Monday for all amounts to be paid each week of the Budget.

  (ii)    <u>Amendment of Budget</u>. The Parties understand that certain unforeseen operational costs may arise that are not contemplated in the Budget. Therefore, it is anticipated that the parties shall work collaboratively to refine or adjust the Budget to reflect additional amounts to be advanced under the Bridge Loan. For the avoidance of doubt, any expenses not reflected in the Budget must be agreed to in writing by the Parties and the Budget shall thereafter be amended to reflect those expense adjustments.

  (iii)   <u>Proof of Budget Compliance Required</u>. Within seven (7) days of any advance made by Noor to Staffing 360 pursuant to the Budget, or as otherwise agreed to in writing by the Parties, Staffing 360 shall provide sufficient evidence to Noor that the advanced funds were used pursuant to the Budget.

  (iv)   <u>Contribution of Funds by Staffing 360</u>. Staffing 360 agrees that if its cash flow from operations over any given week is sufficient to pay some or all of the approved Budget for that week, and to the extent it is permitted under its various lending arrangements, it will pay those costs directly notwithstanding whether Noor has agreed to pay those costs under the Bridge Loan and/or the Budget. Staffing 360 may only pay for costs and expenses strictly necessary for it to continue to operate as a business before receiving money from Noor under the Bridge Loan for any purpose, budgeted or otherwise.

3

(c) Staffing 360 agrees that Noor is entitled to all right, title and interests in accounts receivable generated under the New Contracts and/or existing contracts serviced by Noor. To the extent Staffing 360 receives payments on account of the New Contracts, Staffing 360 will immediately remit those funds to Noor.

5. <u>Transition of Employees</u>. In order to perform the Services, Staffing 360 will cooperate with Noor in the transition of employees and contractors to Noor as needed to perform the Services, including to service the 360 Contracts, or any subsequent New Contracts. All employees and contractors will be subject to Noor's typical hiring practices.

6. <u>Term</u>.

(a) The initial term of this Agreement shall be from February 23, 2025 for 120 days through June 23, 2025, which may be extended by the written consent of the parties.

(b) <u>Milestones:</u> on or before April 25, 2025, Staffing 360 must have:

(i) Signed and executed a Restructuring Support Agreement, an Asset Purchase Agreement, and/or such other substantially similar document or documents with Noor; and

(ii) Filed for bankruptcy protection; or

(iii) Taken other actions which sufficiently demonstrate a commitment to bring the matters concerned herein to a resolution as determined by Noor at its sole discretion.

(c) Noor, at its discretion, may unilaterally cancel this Agreement without notice on April 26, 2025, if an extension has not been agreed to by the parties in writing or if the conditions in parts (b)(i), (b)(ii), or (b)(iii) immediately preceding have not been met.

7. <u>Insolvency Event</u>. In the event Staffing 360 commences a voluntary bankruptcy proceeding or is the subject of an involuntary bankruptcy proceeding under the Bankruptcy Code (each an "Insolvency Event"), Staffing 360 agrees to file a motion within ten (10) business days of the Insolvency Event seeking to either (a) assume this Agreement in accordance with section 365 of the Bankruptcy Code or (b) seeking approval of any purchase agreement entered into between the Parties.

8. <u>Relationship of the Parties</u>. In providing services under this Agreement, Noor is and shall at all times act as an independent third-party, not as an employee or agent of Staffing 360. Neither Noor nor Staffing 360 shall have or exercise any control or direction over the activities of the other, except to the extent required by law. Neither Staffing 360 nor any personnel employed by Staffing 360 are or shall be treated as employees or agents of Noor, and, unless the parties otherwise expressly agree, neither Noor nor any personnel employed by Noor are or shall be treated as the employees or agents of Staffing 360. Nothing contained in this Agreement shall

4

be construed to create a joint venture, partnership, association or other affiliation or like relationship between the parties, it being specifically agreed that their relationship is and shall remain that of independent parties to a contractual relationship as set forth in this Agreement. In no event shall either party be liable for the debts or obligations of the other except as specifically set forth herein.

9. <u>No Obligations to Third Parties</u>. Some of the Services will include services provided to and direct or indirect payment to third-parties by Noor on behalf of Staffing 360. No action by Noor will under any circumstances create a direct obligation by Noor to any third-party, whether for payment or services. Any and all obligations of Noor under this Agreement remain only to Staffing 360. In any relevant communications with third-parties, Staffing 360 must be explicit that any payment or Services by Noor to any third-party is solely on behalf of Staffing 360 and does not create any obligation or expectation of continued Services or payment.

10. <u>Existing Staffing 360 Contracts</u>. Because Staffing 360 may be in default under one or more contracts between itself and third-parties it is expected that Noor will be required to negotiate and enter New Contracts. Notwithstanding the terms of any New Contract, and unless existing contracts are specifically assumed by Noor, Staffing 360 will remain fully liable for any preexisting debts, obligations or other commitments to its customers or other third-parties on account of all existing contractual terms and obligations between Staffing 360 and any other company or person.

11. <u>Data Access and Protection</u>. Staffing 360 will provide data access to Noor sufficient for Noor to perform all of its Services under this Agreement and make appropriate decisions about how and whether to extend funding. Staffing 360 agrees to provide unrestricted access to each of the funded and restored data systems, programs, and operating platforms (the "Data Platforms") set forth in Schedule C which is attached hereto and incorporated herein. The Parties acknowledge that unrestricted access to each of the Data Platforms during the term of this Agreement is imperative for the obligations under this Agreement to be satisfied. The Parties agree that Noor will facilitate any necessary support from former employees of Staffing 360, now employed by Noor with regard to Shared Services, HR and IT. Each Party acknowledges and agrees with the other Party (each a "Data Controller") that where and to the extent that Party acts as a data processor (the "Data Processor") on behalf of such Data Controller, the Data Processor promises to the Data Controller that:

(a) It will comply with the obligations equivalent to those of a data controller under the provisions of the applicable data protection laws as regards any personnel it processes in providing the Services;

(b) It has and will have at all times during the term of this Agreement appropriate technical and organizational measures in place to protect any personal data accessed or processed by it against unauthorized or unlawful processing of personal data and against accidental loss or destruction of, or damages to, personal data held or processed by it and that is has taken all reasonable steps to ensure the reliability of any of its staff or subcontractors which will have access to personal data processed as part of the Services;

5

    (c) It will act only on the other Data Controller's instructions in relation to the processing of any personal data provided to it by the Data Controller or on the Data Controller's behalf, or by its employees or as otherwise obtained by it under the terms of this Agreement; and

    (d) It will provide the Services at least to the level of security set out in its internal guidelines and will allow the Data Controller (or its representative) access to any relevant premises owned or controlled by it on reasonable notice to inspect its procedures as described in (b) above and will, upon the Data Controller's request from time to time, prepare a report for the Data Controller as to its then current technical and organizational measures used to protect any such personal data; and

    (e) Noor acknowledges that it has been provided access to Staffing 360's customer, payroll, and operating data for the limited purposes contemplated herein. Noor represents and warrants that it will not engage in unauthorized access, control or usage of Staffing 360's data, information, software and/or proprietary information in any manner inconsistent with its responsibilities under this Agreement.

12. <u>Promissory Note</u>. Contemporaneous with the execution of this Agreement, Staffing 360 will execute and deliver to Noor a Promissory Note by which Staffing 360 will promise to repay all amounts lent to or spent on behalf of Staffing 360 by Noor in connection with this Agreement, also referred to as the Bridge Loan. Staffing 360 hereby agrees to execute the Promissory Note subject to reasonable negotiation of terms between the parties.

13. <u>Security Interest and Security Agreement</u>. Contemporaneous with the execution of this Agreement and the above described Promissory Note, and to secure Staffing 360's repayment of the Promissory Note, Staffing 360 will deliver to Noor a Security Agreement by which Staffing 360 will grant to Noor a security interest in all accounts receivable related to existing contracts for which Noor provides Services under this Agreement, or any other contracts of Staffing 360 that are benefitted by Noor's Services or funding. Noor may file a UCC-1 financing statement perfecting its interest in the accounts receivable, and Staffing 360 will cooperate fully with Noor in this regard. Staffing 360 hereby agrees to execute the Security Agreement subject to reasonable negotiation of terms between the parties.

    Noor may collect from the accounts receivable upon which it has a lien any amounts due and owing to it under the Promissory Note without need to provide further notice to Staffing 360. Upon reasonable request, Noor will provide Staffing 360 with an updated accounting of all amounts lent to Staffing 360 and all amounts collected by Noor and applied against the amount owed to Noor by Staffing 360. In the event Noor purchases the assets of Staffing 360 for a credit bid, the lien shall be satisfied and the amounts collected and applied shall be accounted for and allocated by the parties at the time of closing.

14. <u>Roll-up of Promissory Note into Debtor-In-Possession Financing</u>. As contemplated herein, 360 Staffing will be filing a Chapter 11 Bankruptcy during the term of this Agreement. Noor may choose to offer post-petition Debtor-In-Possession financing to Staffing 360 ("DIP

6

Loan"). If Noor provides a DIP Loan to Staffing 360, the Parties agree to "roll-up" all amounts due under the Promissory Note and Bridge Loan pursuant to applicable rules and procedures into the DIP Loan, subject to approval by the Bankruptcy Court. The Budget attached hereto anticipates that Noor may provide a DIP Loan of approximately $395,000 or as otherwise agreed to by the Parties. Notwithstanding the foregoing, Noor is under no obligation to provide a DIP Loan to Staffing 360.

15. <u>Termination</u>. Notwithstanding any other provisions herein, any Party may terminate its participation in this Agreement at any time by written notice of termination, effective on the date such notice is received, and without incurring liability to the other Party, after the occurrence of any of the following events:

(i) Any of the Parties fails to perform any material obligations under this Agreement after having been notified of such default and has not cured the default a reasonable period;

(ii) Upon the occurrence and continuation for an uninterrupted period of ninety (90) calendar days of a condition of Force Majeure as defined herein;

(iii) As described in Section 6 above, upon the failure of Staffing 360 to achieve any agreed to milestones, whether expressly delineated in this Agreement, or agreed to in further negotiations between Noor and Staffing 360;

(iv) Failure by Staffing 360 to provide evidence of compliance with the Budget as required by Section 4(b)(iii) above; or

(v) If Staffing 360 uses its own money for any purpose other than what is strictly necessary for it to operate as a business while also having a balance owed to Noor under the Bridge Loan or while receiving money under the Bridge Loan for any use whatsoever, whether or not pursuant to an approved Budget.

(a) <u>Rights and Obligations Upon Termination</u>. Termination of this Agreement will extinguish all rights and obligations of the Parties, except for those rights and obligations accrued prior to termination. Upon termination of this Agreement for any reason whatsoever, Noor will immediately cease performing the Services. Termination of this Agreement will not impact any obligations or rights that Noor has under the New Contracts, the Promissory Note, and/or the Security Agreement.

(b) <u>Status of Payments Upon Termination</u>. If termination of this Agreement occurs due to any event other than breach or default by Noor, Noor will be entitled to compensation for all Services performed and reimbursement of any amounts due under the Bridge Loan and Promissory Note that have accrued prior to the date of termination.

(c) <u>Termination by Mutual Agreement</u>. Notwithstanding any other provisions herein, Noor and Staffing 360 may through mutual agreement terminate this Agreement with immediate effect.

16. <u>Release and Indemnity</u>.  Staffing 360 on behalf of its successors and assigns, affiliates, agents, and representatives hereby forever releases Noor, including any successors and assigns, affiliates, agents, and representatives from any claims it may have as a result of this Agreement, including but not limited to any claims in any way related to the negotiation and/or execution of the New Contracts or any claims asserted by any third-party that Staffing 360 had a employment or contractual relationship with prior to the execution of this Agreement. Staffing 360 agrees to further indemnify and hold harmless Noor against any claims any third party may assert against Noor with respect to this Agreement.

17. <u>General Provisions</u>.

(a) <u>Governing Law and Jurisdiction</u>.  This Agreement shall be governed by and construed in accordance with the laws of New York, without regard to or application of its conflicts of law principles.  Each of the parties has participated in the preparation of this Agreement and agrees that in construing the provisions of this Agreement, the general rule that provisions shall be construed most strongly against the party that drafted such provisions shall have no application. Each party hereto agrees to submit to the personal jurisdiction and venue of the federal courts in New York for resolution of all disputes and causes of action arising out of this Agreement, and each party hereby waives all questions of personal jurisdiction and venue of such courts, including, without limitation, the claim or defense therein that such court constitutes an inconvenient forum

(b) <u>No Waiver</u>.  The failure of any Party to assert any of its rights under this Agreement will not be deemed to constitute a waiver of that Party's right thereafter to enforce each and every provision of this Agreement in Accordance with its terms.

(c) <u>Subject Headings</u>.  The subject headings of this Agreement are included for purposes of convenience only and will not affect the construction or interpretation of any of its provisions.

(d) <u>Severability</u>.  In the event that any provision hereof is found invalid or unenforceable pursuant to a final judicial decree or decision, the remainder of this Agreement will remain valid and enforceable according to its terms. In the event of such partial invalidity, the Parties will seek in good faith to agree on replacing any such legally invalid provision with the provisions with provisions which, in effect, will most nearly and fairly approach the effect of the invalid provision.

(e) <u>Force Majeure</u>.  No Party will be liable to the other Party for any delay or omission in the performance of any obligation under this Agreement, other than the obligation to pay monies, where the delay or omission is due to cause or conditions beyond the reasonable control of the Party obliged to perform, including but not limited to strikes or other labor difficulties, acts of God, acts of government (in particular with respect to the refusal to issue necessary import or export licenses), war, riots, embargoes, or inability to secure materials or transportation facilities, or the intervention of any governmental authority, in each case not otherwise invoking a breach of this Agreement ("Force Majeure"). If Force Majeure prevents or delays the performance by any Party of any obligation under this Agreement, then the Party claiming Force Majeure will promptly notify the other Party thereof in writing. If such delay continues for more than sixty (60) calendar days, any Party damaged by the inability to the Party claiming Force Majeure to perform will have the right to terminate its or their participation in this Agreement with immediate effect upon written notice.

(f) <u>Hardship</u>. In entering into this Agreement, the Parties recognize that it is practically impossible to make provisions for every contingency which may arise during the validity of this Agreement. Accordingly, the Parties hereby state and acknowledge their mutual intent that this Agreement will be enforced and implemented among them with fairness and without detriment to any Party's interest, and that if, in the course of performing the obligations and duties as set forth in this Agreement, substantial hardship or unfairness is anticipated by or has occurred to any Party, the Parties will use their best commercial endeavors to agree upon such action as may be necessary to rectify or remove the causes thereof, and, if deemed necessary, compensate for disadvantages suffered.

(g) <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which together constitute one and the same instrument.

(h) <u>Entire Agreement and Amendments</u>. With the exception of the MOU, this Agreement, together with the Schedules attached hereto, constitutes the entire agreement among the Parties, and supersedes all prior agreements (written or oral), understandings and communications among the Parties with respect to the subject matter hereof. No modification, amendment, or waiver of this Agreement or provisions hereof will be binding upon any Party unless made in writing or confirmed in writing by their duly authorized representatives.

(i) <u>Notices</u>. All notices, reports, invoices and other communication among the Parties which are required or permitted under this Agreement will be in writing and sent by facsimile or email, by registered or certified mail, postage prepaid and return receipt requested, by overnight courier or otherwise delivered by hand, messenger or by telecommunication. All such communication will be sent to a Party at the address specified in below or to such other address of which the receiving Party has given prior notice to the sending Party. All such communication will be effective upon receipt by the sender of confirmation of the delivery, or where no such confirmation is possible, when received.

| | |
|---|---|
| If to Noor: | Noor Staffing Group, LLC<br>Att: Habib Noor, CEO<br>28 West 44th Street, 16th Floor<br>New York, NY 10036<br>hnoor@noorinc.com |
| With Copy To: | Jordan S. Blask, Esq.<br>Frost Brown Todd LLP<br>501 Grant Street, Suite 800<br>Pittsburgh, PA 15219<br>jblask@fbtlaw.com |
| If to Staffing 360: | Brendan Flood<br>757 Third Avenue, 27th Floor<br>New York, NY 10017<br>brendan.flood@staffing360solutions.com |

        With Copy To:      Kirk Burkley, Esq.
                                  Berstein-Burkley, P.C.
                                  601 Grant Steet 9th Floor
                                  Pittsburgh, PA 15219
                                  kburkley@bernsteinlaw.com

       18.    <u>Waiver</u>**.** No act, delay, omission or course of dealing between or among the parties hereto will constitute a waiver of their respective rights or remedies under this Agreement. No waiver, change, modification or discharge of any of the rights and duties of the parties hereto will be effective unless contained in a written instrument signed by the party sought to be bound.

       **IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date set forth in the preamble above.

                                  NOOR STAFFING GROUP, LLC

                                  By_____
                                  Name: Habib Noor
                                  Title: CEO

                                  STAFFING 360 SOLUTIONS, INC.
                                  MONROE STAFFING SERVICES, LLC
                                  LIGHTHOUSE PLACEMENT SERVICES, INC.
                                  FARO RECRUITMENT AMERICA, INC.
                                  HEADWAY WORKFORCE SOLUTIONS, INC.
                                  KEY RESOURCE, INC.
                                  HEADWAY PAYROLL SOLUTIONS, LLC
                                  HEADWAY EMPLOYER SERVICES, LLC
                                  HEADWAY HR SOLUTIONS, INC.
                                  NC PEO HOLDINGS, LLC

                                  By _____
                                  Name: Brendan Flood
                                  Title: CEO

0145951.0802558   4913-3435-2686

SCHEDULE A

FUNDS ADVANCED BY NOOR TO STAFFING 360 AS OF APRIL 7, 2025

| Category | Amount | Note | Date sent |
|---|---|---|---|
| AP | $50,000.00 | Operating Costs of 360 | 03/12/25 |
| AP | $50,000.00 | Operating Costs of 360 | 03/17/25 |
| AP | $44,310.07 | Licensing Fees for Email System | 03/17/25 |
| Payroll | $891,394.82 | Temp payroll Week Ending 03/02* | 03/11/25 |
| Payroll | $56,000.00 | Internal payroll Week Ending 03/09- Net* | 03/14/25 |
| Payroll | $7,962.08 | Internal payroll Week Ending 03/09-Net* | 03/14/25 |
| Taxes | $22,920.13 | Employee taxes Week Ending 03/09 (estimated)* | Pending |
| Taxes | $31,608.35 | Employer Taxes Week Ending 03/09 (SUI, FICA 50% employer portion)(estimated)* | Pending |
| Payroll | $155,172.60 | Internal payroll Week Ending 03/09* | Paid by Noor |
| Payroll | $1,554,925.16 | Temp payroll Week Ending 03/09* | Paid by Noor |
| Taxes | $150,525.92 | Employer Taxes Week Ending 03/09 (SUI, FICA 50% employer portion)* | Paid by Noor |
| Workers Comp | $76,954.40 | Workers Comp 03/09 - Using estimates 4.5% (estimated) | Pending |
| Payroll | 61,114.38 | Internal payroll Week Ending 03/16 | 03/24/25 |
| Taxes | 4,889.15 | Employer Taxes Week Ending 03/16 | 03/24/25 |
| AP | 15,000.00 | Access Fee for Avionte, Headway Connect and MS 365 | 03/24/25 |
| AP | 152,799.47 | UnitedHealthcare Invoice  01/01/25-03/31/25 | 03/24/25 |
| | | | |
| **Total** | **$3,325,576.53** | | |

*The Parties anticipate that these amounts will be paid to Noor pursuant to the Reimbursement Obligation under the MOU.  To the extent that any amount remains unpaid after collection of the Staffing AR (as defined in the MOU), such amounts will be considered due and owing under the Bridge Loan and Promissory Note defined herein.

11

SCHEDULE B

BUDGET OF EXPENSES TO BE PAID COMMENCING ON APRIL 7, 2025
AND OFFER TO PURCHASE ASSETS OF STAFFING 360's CH. 11 ESTATE

[SEE ATTACHED]

| Week Ending | 28-Mar | 4-Apr | 11-Apr | 18-Apr | 25-Apr | Post-Petition | 2-May | 9-May | 16-May | 23-May | 30-May | 6-Jun | 13-Jun | 20-Jun |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| FTE's | 6 | 6 | 5 | 5 | 5 | | 5 | 5 | 5 | 5 | 5 | 5 | 3 | 3 |
| Wages* | $35,811 | $35,881 | $30,496 | $30,496 | $30,496 | | $30,496 | $22,872 | $22,872 | $22,872 | $22,872 | $22,872 | $15,687 | $15,687 |
| Medical Coverage | $8,000 | | | | $6,500 | | | | | | $6,500 | | | |
| D&O Insurance^ | | | $42,948 | | | | | $42,948 | | | | $42,948 | | |
| Data | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 |
| Microsoft Licenses | $600 | | | | $500 | | | | | | $500 | | | |
| Azure | $10,000 | | | | $10,000 | | | | | | $10,000 | | | |
| Legal | | $50,000 | | | | | $50,000 | | | | | $50,000 | | |
| | | | | | | | | | | | | | | |
| Total Weekly Budget | $56,411 | $87,881 | $75,444 | $32,496 | $49,496 | | $82,496 | $67,820 | $24,872 | $24,872 | $41,872 | $117,820 | $17,687 | $17,687 |

**Total Prepetition (Bridge Loan)‡**     $301,728
**Total Postpetition (DIP Loan)∞**     $395,126

**Notes**
‡Prepetition budget plus $464,995.28 paid as of March 26.
∞DIP Facility shall be granted super priority lien position.

(i) Noor proposes to aquire the assets of the Ch. 11 Estate of Staffing 360 for the total sum of **$1,130,000** inclusive of its Bridge Loan ($766,723) and DIP Loan ($395,126) through a credit bid at § 363 Sale. (ii) In addition to $1.13mm, Noor will agree to pay the Estate 5% of Gross Revenue above $65mm up to $500k per year in connection with any customers that Noor was servicing during the week of March 31-April 7 for a total of three (3) years. (iii) To the extent that any amount remains unpaid in connection with the Reimbursement Obligation under the MOU, Noor will have an allowed unsecured claim in that amount which may be used to credit bid for any assets of the Estate or may be used to offset Noor's Gross Revenue payment obligation.

SCHEDULE C

DATA PLATFORMS

1. Access to the legacy Staffing 360 Avionte (BOLD & Classic).

2. Access to the legacy Staffing 360 Office 365 tenant.

3. A newly customized version of Headway Connect in order to connect with Noor Avionte database, utilizing Stitch by Spark Equation developers, hosted by Azure and paid by Noor.

4. Access to Zoho analytics to customize Headway Connect to link with Noor Avionte.

5. Access to Zoho CRM data from the legacy Staffing 360 organization.