EXHIBIT 4

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

| | |
|---|---|
| IN RE:<br><br>HEADWAY WORKFORCE SOLUTIONS, INC., *et al.*[1]<br><br>    Debtors. | Bankruptcy No. 25-01682-5-JNC<br><br>Chapter 11<br><br>*(Joint Administration Requested)* |

**DECLARATION OF BRENDAN FLOOD IN SUPPORT OF
VOLUNTARY PETITION FOR RELIEF, FIRST DAY MOTIONS
AND RELATED RELIEF SOUGHT IN THIS CHAPTER 11 CASE**

Brendan Flood declares and states, under penalty of perjury pursuant to 28 U.S.C. § 1746 that:

**INTRODUCTION**

1. I am more than 18 years old and am competent to testify to the matters set forth below.

2. I am the CEO of Headway Workforce Solutions, Inc ("Headway"); Staffing 360 Solutions, Inc.("Staffing 360"); Monroe Staffing Services, LLC; Key Resources, Inc.; and Lighthouse Placement Services, Inc. (each a "Debtor" and collectively the "Debtors"), and in this capacity, I am familiar with each Debtors business and financial affairs as well as the business and financial affairs of all of the affiliated entities. I have been the CEO of the Debtors since January 2014.

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors Federal Employer Identification Number: Headway Workforce Solutions, Inc. (4871); Staffing 360 Solutions Inc., (0859); Monroe Staffing Services LLC (1204); Key Resources, Inc. (9495); Lighthouse Placement Services, Inc. (8093).

3.  I submit this declaration (the "Declaration") in connection with the each Debtor's voluntary petition (the "Petition") for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") filed in the United States Bankruptcy Court for the Eastern District of North Carolina (the "Bankruptcy Court") on May 5, 2025 (the "Petition Date") and in support of each Debtor's plan for this chapter 11 case and in support of relief requested by each Debtor in connection with the commencement of the bankruptcy case (collectively, the "First Day Motions") and hereafter.

4.  Pursuant to the *Corporate Resolution* dated May 5, 2025 (the "Written Action"), I was authorized to execute and file the voluntary petitions for relief of Headway and the four related subsidiaries. A true and accurate copy of the Written Action was filed along with the Petition.

**Business Background**

5.  Staffing 360 is a staffing company that was formed in 2008 from the purchase of Golden Fork Corporation with the goal of expanding its ability to provide staffing services through the acquisition of other similar entities.

6.  In January 2014 Staffing 360 acquired Initio International (Holdings) Limited, a UK entity with a US subsidiary called Monroe Staffing Services, LLC. I owned 80% of Initio. At the point of the acquisition, I became the Chairman of the group and, around 2019, I assumed the additional roles of CEO and President following an internal reorganization.

7.  In 2015 Staffing 360 was uplisted to the Nasdaq National Market (Nasdaq: STAF) and continued with its strategy of acquisition.

8.  In addition to Monroe Staffing Services, LLC, the Staffing 360 has three primary subsidiaries through which it conducted business.

9.      Lighthouse Placement Services, Inc., a Massachusetts staffing company, was acquired by the debtor in 2015.

10.     Key Resources Inc., a North Carolina company, became a subsidiary of the company in November 2019 organized under Monroe Staffing Services, LLC.

11.     Headway Workforce Solutions, Inc., a Delaware Corporation headquartered in Raleigh, North Carolina and its subsidiaries (Headway Employer Services, LLC, Headway Payroll Services, LLC, Headway HR Services, Inc., NC PEO Holdings, LLC) joined the company in May 2022.

12.     Staffing 360, through the four primary subsidiaries provided temporary staffing to clients and billed on an hourly basis. The staffing services were provided through skillsets of temporary workers in Accounting & Finance, Information Technology, Engineering, Administration and Light Industrial Commercial activities. Typical clients were Small and Medium-sized Enterprises. Permanent placement services were also conducted depending on client requirements.

13.     The Debtor's operations were nationwide.

**Operational Challenges**

14.     From the time of formation in 2008, the Debtors struggled to raise equity due in part to its lack of trading history, and the need to maintain the cost of operations resulted in the need to incur additional debt.

15.     The COVID pandemic resulted in a dramatic downturn in the Debtors revenues as many clients greatly reduced hiring and staffing needs. The Debtors revenue's declined by 30% during 2020 and 2021.

16. The employment market served by the Debtors remains well below pre-pandemic levels which hindered the post-COVID expected recovery.

17. The acquisition of Key Resources Inc. led to litigation in North Carolina that burdened the Debtors performance and resources and resulted in a significant settlement obligation.

18. Headway Workforce Solutions Inc. was a named defendant in a class action lawsuit in Illinois involving the Biometric Information Data Protection Act that has now been reduced to a settlement, further burdening the Debtor's resources.

19. In September of 2023, the UK business portion of the Debtors was disposed of via an Administration action substantially similar to a Chapter 11 proceeding.

20. At that same time, the directors of the Debtors sought to sell the U.S. portion of the company to a larger entity in an attempt to resolve the long-term debt and liquidity issues.

21. Staffing 360 had an agreed transaction with Atlantic International Group Inc. ("Atlantic", Nasdaq: ATLN) but, in late February 2025 Atlantic unexpectedly backed out of the deal.

22. Staffing 360 was delisted from NASDAQ on February 13, 2025.

23. Further, MidCap Financial X Trust ("MidCap") (the company's payroll funder and accounts receivable financer) unexpectedly and without notice ceased funding payroll on March 7th, 2025.

24. The inability to fund payroll proved to be a near fatal blow to the Debtors. MidCaps actions left the Debtors with serious unfunded payroll obligations and the inability to service customer contracts and staffing needs.

25. Recently, short-term loan companies garnished the payments from Medicaid and the insurance companies, redirecting funds before they even reached the Debtor's bank account.

26. The Debtors have two secured creditors, MidCap Financial X Trust with a first lien security over all assets and Jackson Investment Group (a family fund) with a second lien subordinate to MidCap[2].

27. MidCap, while being the first-priority lien holder, is nearly paid in full.

28. In order to salvage what was left of the Debtor's customer contracts and in order to fund payroll and contractor wages, Noor Staffing Group ("Noor"), a privately held entity, and the Debtor entered into a term sheet and ultimately an administrative service agreement for the continued management of the debtor's operations.

29. This agreement with Noor allowed the Debtor to preserve value of the estate, pay employee wages, and continue funding day-to-day operations and obligations.

30. Noor Staffing Group has expressed an interest in acquiring most of the Debtor's the remaining assets in order to effectuate a smooth transition of the Debtor's operations and ensure continuity of employment of many of the Debtor's former employees and contractors.

31. Additionally, the Debtors have significant net operating losses that they seek to explore monetizing through an appropriate sale and/or plan.

---

[2] Upon information and belief, the Debtors are aware of two other creditors claiming a security interest in specific collateral that the Debtor will either surrender or believes has expired. Those creditors are Sunz Insurance Solutions, LLC ("Sunz") and AT&T Capital Services, Inc. ("AT&T") Sunz has a security interest in the following collateral: accounts; chattel paper; commercial tort claims; documents; general intangibles; goods; instruments; insurance; intellectual property; investment related property; LOC rights; money; receivables and receivables records; including all collateral records, support and supporting obligations thereto; including all proceeds, products, accessions, rents and profits thereof. AT&T has a security interest in the following collateral: a true lease all telecommunications and data equipment including all additions, upgrades and accessions thereto and all proceeds thereof under Schedule NO. 6077400-001.

**The Need for Chapter 11 Relief**

32.     The Debtor is seeking chapter 11 relief to stay the collection efforts of multiple creditors that hinder the day-to-day operation of the company and continue to diminish the value of the remaining assets.

33.     The Debtor filed chapter 11 to preserve and maximize the value of the Debtor's estate through a sale and potentially a chapter 11 plan.  Prior to the filing, at least one credit attached one of the Debtors' bank accounts and swept funds necessary to effectuate the sale contemplated herein.  As part of the chapter 11 process, the Debtor intends to effectuate a sale of the remaining assets in a manner that preserves the greatest value for all parties, including the Debtor's former employees and contractors and helps to secure their continued employment and generate value for the Debtors' estates.

34.     I have reviewed the First Day Motions filed by the Debtor and the statements therein.  Each of the First Day Motions seeks relief that I believe is necessary and critical to the efficient administration of the Debtor's estate and to minimize the disruption of ongoing operations and loss of value.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.


                                                                */s/ Brendan Flood*
                                                                Brendan Flood