# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

| | |
|---|---|
| IN RE:<br><br>**HEADWAY WORKFORCE SOLUTIONS INC.,** *et al.*,[1]<br><br>DEBTORS. | CASE NO. 25-01682-5-JNC<br><br>CHAPTER 11<br><br>(Jointly Administered) |

**OBJECTION TO DEBTORS' AMENDED AND EXPEDITED MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING POST-PETITION FINANCING AND GRANTING OTHER RELIEF [D.E. 56]**

The United States of America, by and through the Acting United States Attorney for the Eastern District of North Carolina, on behalf of the Internal Revenue Service (the "IRS") objects to the amended motion [D.E. 56] (the "Amended Motion")[2] filed by Headway Workforce Solutions, Inc. and its affiliated debtors (collectively, the "Debtors") for authorization to obtain post-petition financing and for other relief.

## INTRODUCTION

Months ago, the Debtors entered into an agreement with Noor Staffing Group, LLC ("Noor") to "transition" substantially all of their employees and business operations to Noor, to file for bankruptcy protection, and to seek a "roll-up" of Noor's junior prepetition debt as part of any DIP financing provided by Noor. Meanwhile,

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtors Federal Employer Identification Number: Headway Workforce Solutions, Inc. (4871); Staffing 360 Solutions Inc., (0859); Monroe Staffing Services LLC (1204); Key Resources, Inc. (9495); Lighthouse Placement Services, Inc. (8093).

[2] Capitalized terms not otherwise defined shall have the same meeting as set forth in the Amended Motion.

the Debtors had accrued millions of dollars in prepetition federal tax liability for failure to pay payroll taxes, a substantial portion of which led to the filing of prepetition Notices of Federal Tax Liens ("NFTLs").

Despite the knowledge that they would be filing these cases months ago, the Debtors have not filed schedules, and they seek expedited approval of financing on terms that will effectively dictate the course of these Chapter 11 cases and lock in a sale of the Debtors' business assets to Noor. The proposed financing and order contain numerous problematic provisions that tilt this case in favor of the parties that had a seat at the table before these cases were filed, including:

    a. A premature "roll-up" of Noor's prepetition junior debt to senior secured priority status on certain assets. While the definition of "Primed Assets" has been scaled back from the original motion, the lack of schedules and the approval of a priming lien prior to the meeting of creditors would inhibit the ability of creditors to conduct any meaningful evaluation of these assets before they are locked up for Noor's benefit.

    b. A grant of liens on avoidance actions and the proceeds thereof. Proposed Interim Order at ¶ 7.

    c. A complete release of Noor from estate claims upon entrance of the Proposed Interim Order with no challenge period. Proposed Interim Order at ¶ 23.

    d. A broad release of MidCap Funding IV Trust ("MidCap") that becomes binding on ***all non-debtor parties in interest*** after an unduly restrictive 60-day challenge period.[3]

---

[3] It is anticipated that the Debtors will submit a revised proposed order that contains a release of MidCap that is significantly broader than what is contained in the current filed version of the order.

2

  e. Events of default that effectively prohibit the Debtors from proposing or supporting any plan or sale motion that is not approved by Noor. *See* DIP Financing Agreement at ¶¶ 11.17, 11.23; Proposed Interim Order at ¶ 12(i).

  f. A compressed case timeline in the form of events of default that limit the Debtors' ability to seek an extension of exclusivity or confirmation without Noor's consent. *See* DIP Financing Agreement at ¶ 11.22.

Additionally, the Amended Motion fails to account for the IRS secured claim and the federal tax liens. Under 26 U.S.C. § 6323(c), a federal tax lien has first priority on accounts receivable originated 45 days after the filing of NFTL. The Proposed Interim Order grants relief from the automatic stay to both MidCap and Noor to collect and apply accounts receivable without any attempt to address the possible superior priority status of the IRS secured claim on certain accounts receivable. Nor does the Amended Motion address the IRS's potential interest in cash collateral and whether it is adequately protected.

Finally, the Debtors have proposed a budget that allocates no funds for the payment of post-petition payroll taxes. To the extent the Debtors' remaining employees are not independent contractors, the Debtors must pay post-petition payroll taxes.

For all these reasons, as detailed more fully below, the Amended Motion should be denied unless amended.

## BACKGROUND

A. **General Background**

2. On May 5, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

3. No schedules or statements have been filed. The deadline for the Debtors to file schedules and statements has been extended to and including June 19, 2025. D.E. 52.

4. On June 6, 2025, the Court entered an order appointing a committee of unsecured creditors (the "Committee"). D.E. 73.

B. **The IRS Claims**

5. The IRS has filed proofs of claim showing federal tax liabilities in the following amounts. Certain amounts are estimated due to unfiled returns and unfiled schedules, and the IRS reserves the right to amend its proofs of claim.

| Debtor | Secured | Priority Unsecured | General Unsecured | Total |
|---|---|---|---|---|
| Headway Workforce Solutions Inc. | $0.00 | $498,019.67 | $152,977.20 | $650,996.87 |
| Staffing 360 Solutions, Inc. | $0.00 | $0.00 | $0.00 | $0.00 |
| Key Resources, Inc. | $2,556,733.35 | $60,018.70 | $4,157.45 | $2,620,909.50 |
| Monroe Staffing Services, LLC | $0.00 | $2,900,627.52 | $1,148,991.71 | $4,049,619.23 |
| Lighthouse Placement Services, Inc. | $687,811.06 | $0.00 | $0.00 | $687,811.06 |

4

6. As indicated on the proofs of claim filed in the Debtors' respective cases, the substantial secured and priority unsecured amounts arise almost entirely from payroll tax liability under the Federal Insurance Contributions Act ("FICA") and the Federal Unemployment Tax Act ("FUTA") and associated interest.

C. **Prior Version of the Amended Motion**

7. On May 15, 2025, the Debtors filed a prior version of the Amended Motion, seeking postpetition financing and other relief. D.E. 41.

8. MidCap, the Bankruptcy Administrator, and the IRS all filed objections. D.E. 45, 47, 48, respectively.

9. In connection with its objection, MidCap filed as an exhibit an Administrative Services Agreement ("ASA"), dated to be effective on February 23, 2025, which appears to be an agreement between the Debtors and Noor. *See* D.E. 45 at Exhibit A.

10. The Debtors subsequently filed certain exhibits to be presented at a hearing on the prior version of the Amended Motion, which included the ASA. D.E. 49 at Exhibit 3.

11. At a hearing on May 20, 2025, the Debtors informed the Court that rather than seeking approval that day, the Debtors would file an amended financing motion.

D. **The ASA**

12. The ASA is dated to be effective February 23, 2025. ASA at 1. However, the recital paragraphs detail certain events that took place in March 2025. *Id.*

13.  The ASA provides for the "transition" of the Debtors' employees to Noor. *Id.* at ¶ 5. Upon information and belief, substantially all of the employees and operations of the Debtors have completed the "transition" to Noor.

14.  The ASA also required the Debtors to: (i) execute a restructuring support agreement, an asset purchase agreement, or other substantially similar document with Noor; (ii) file for bankruptcy protection; and (iii) take "other actions which sufficiently demonstrate a commitment to bring the matters concerned herein to a resolution as determined by Noor at its sole discretion." *Id.* at ¶ 6.

15.  The ASA also required the Debtor to seek assumption of the ASA or approval of a purchase agreement with Noor after filing for bankruptcy. *Id.* at ¶ 7.

16.  Under the ASA, the Debtors agreed that if Noor provides debtor-in-possession financing, the Debtors agree to a "roll-up" of all prepetition loaned amounts from Noor in the DIP Loan subject to approval by the Bankruptcy Court. *Id.* at ¶ 14.

    **E.**    **The Amended Motion**

17.  On May 29, 2025, the Debtors filed the Amended Motion. D.E. 56.

18.  Upon information and belief, it is anticipated that the Debtors will submit a revised proposed order which includes additional release provisions for MidCap.

19.  On June 2, 2025, the Debtors filed an emergency motion to approve bid procedures (the "Bid Procedures Motion"). D.E. 66.

**ARGUMENT**

I. **The Debtors Have Not Demonstrated that the Proposed Financing is in the Best Interest of the Estate**

In determining whether to approve post-petition financing, courts consider, among other things, whether the financing "is in the best interests of the estate and its creditors" and whether the terms of the transaction are "fair, reasonable, and adequate, given the circumstances of the debtor-borrower and the proposed lender." *See In re Mid-State Raceway, Inc.*, 323 B.R. 40, 60 (Bankr. N.D.N.Y. 2005); *see also In re LA Dodgers LLC*, 457 B.R. 308, 312 (Bankr. D. Del. 2011) (citing *In re St. Mary Hosp.*, 86 B.R. 393, 401 (Bankr. E.D. Pa. 1987)).

A court will not approve a proposed financing "where it is apparent that the purpose of the financing is to benefit a creditor rather than the estate." *In re Ames Dept. Stores, Inc.*, 115 B.R. 34, 39 (Bankr. S.D.N.Y. 1990); *see also In re Aqua Assocs.*, 123 B.R. 192, 195-98 (Bankr. E.D. Pa. 1991) ("[C]redit should not be approved when it is sought for the primary benefit of a party other than the debtor."). Similarly, courts look with suspicion on financings that "would tilt the conduct of the bankruptcy case" or "prejudice, at an early stage, the powers and rights that the Bankruptcy Code confers for the benefit of all creditors." *Ames Dept. Stores*, 115 B.R. at 37.

Here, the terms of the proposed financing effectively lock in the sale transaction to Noor. The Debtors seek a premature "roll-up" of Noor's prepetition junior debt to senior secured priority status on certain "Primed Assets." Amended Motion at 10; Proposed Interim Order at ¶ 7(i). These same assets are the subject of

7

a potential sale for which the Debtors seek approval of bid procedures. *See* Bid Procedures Motion at 1–2. Noor will be permitted to credit bid the full amount of its rolled-up debt toward a purchase of the Primed Assets. *Id.* at 6. The concern that the DIP financing terms benefit Noor rather than the estate is amplified when viewed in conjunction with the proposed bid procedures which contain provisions that will almost certain chill the bidding process such as: (i) a market period limited to a mere seven days after the Debtors are required to serve notice; (ii) a 4% break-up fee and up to $100,000 in expense reimbursements for Noor; (iii) an unduly restrictive definition of who may submit a "Qualifying Bid." *See* Bid Procedures Motion at 2, 8–9.

Other provisions of the proposed financing give Noor veto power over the course of these cases including events of default that effectively prohibit the Debtors from proposing or supporting any plan or sale motion that is not approved by Noor and a compressed case timeline in the form of events of default that limit the Debtors' ability to seek an extension of exclusivity or confirmation without Noor's consent. *See* DIP Financing Agreement at ¶¶ 11.17, 11.22, 11.23; Proposed Interim Order at ¶ 12(i).

Still other provisions limit the potential recovery for other creditors such as a proposed lien on avoidance actions and the proceeds thereof and a complete release of Noor from estate claims upon entrance of the Proposed Interim Order with no challenge period. *See* Proposed Interim Order at ¶¶ 7, 13, 23. The Court should not grant a lien on avoidance actions which exist to ensure equality of distribution among the bankruptcy estate and to benefit all unsecured creditors. *See Buncher Co. v.*

8

*Official Comm. of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000) ("The purpose of fraudulent conveyance law is to make available to creditors those assets of the debtor that are rightfully part of the bankruptcy estate, even if they have been transferred away. When recovery is sought under section 544(b) of the Bankruptcy Code, any recovery is for the benefit of all unsecured creditors, including those who individually had no right to avoid the transfer.") (internal citations omitted); *Bethlehem Steel Corp. v. Moran Towing Corp.* (*In re Bethlehem Steel Corp.*), 390 B.R. 784, 786-87 (Bankr. S.D.N.Y. 2008) ("Avoidance actions . . . never belonged to the Debtor, but rather were creditor claims that could only be brought by a trustee or debtor in possession . . ."). Additionally, the Debtors' release of Noor should be subject to a reasonable challenge period to enable an investigation by the Committee.

Finally, while not included in the filed version, it is anticipated that the Debtors will submit a revised version of the Proposed Interim Order that grants MidCap a broad release that becomes binding on ***all non-debtor parties in interest*** after a 60-day challenge period. It is anticipated that the proposed release will extend beyond mere lien perfection issues. With respect to releases by the Debtors and the estate, the IRS expects the Committee will object to the unduly restrictive 60-day challenge period, and the IRS supports such an objection.

With respect to releases that are binding on ***non-debtor parties in interest***, this Court should not and cannot approve such a release for a non-debtor, such as MidCap or Noor, absent consent of the releasing parties. *See Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 226–27 (2024). The IRS does not consent to such a

9

release. Moreover, the Anti-Injunction Act prohibits federal courts from enforcing such a release against the IRS. *See* 26 U.S.C. § 7421(a); *CIC Servs., LLC v. Internal Revenue Serv.*, 593 U.S. 209, 212 (2021) (The Anti-Injunction Act "protects the [Federal] Government's ability to collect a consistent stream of revenue, by barring litigation to enjoin or otherwise obstruct the collection of taxes.") (quoting *National Federation of Independent Business v. Sebelius*, 567 U.S. 519, 543 (2012)). Accordingly, the Court should not approve a release for the non-debtor creditors that is binding on non-debtor parties in interest, such as the IRS.

In sum, the terms of the proposed post-petition financing will effectively dictate the outcome of these cases on terms that are not favorable to the estate. The Amended Motion should be denied unless these terms are amended.

**II.    The Motion Ignores the Secured Position of the IRS and Grants Relief that May Harm the IRS Secured Position**

The Debtors seek authorization to use the cash collateral of secured creditors. *See* Motion at 17; Proposed Order at ¶ 2. The Debtors also seek to grant relief from the automatic stay to allow MidCap to collect certain accounts receivable (and presumably apply them to the outstanding debt) and to allow Noor to apply the proceeds of certain accounts receivable. Proposed Interim Order at ¶¶ 13, 14.

Under 26 U.S.C. § 6323(c), a federal tax lien has first priority on accounts receivable originated 45 days after the filing of an NFTL. Here, the IRS has filed NFTLs in connection with the tax liability of two Debtors: Lighthouse Placement Service, Inc. and Key Resources, Inc. The IRS has requested information from the Debtors in order to determine whether the IRS has a first priority lien on any of the

10

accounts receivable. Until that issue is determined, relief from stay should not be granted to apply the accounts receivable, at least with respect to the accounts receivable potentially subject to the federal tax liens.

Additionally, the Amended Motion fails to address the IRS's potential interest in cash collateral and whether it is adequately protected. The IRS does not consent to the use of cash collateral in which it has an interest on the terms proposed here.

### III. The Budget Fails to Account for the Payment of Post-Petition Payroll Taxes

A failure to pay taxes owed after the Petition Date constitutes cause to convert or dismiss these cases. *See* 11 U.S.C. § 1112(b)(4)(I). The Debtors (who accrued millions of dollars in prepetition federal tax liability in connection with their failure to pay payroll taxes) have proposed a budget that allocates no funds to a line item for "Withholding and 941." Exhibit 2 to Amended Motion.

The IRS understands the Debtors' position to be that the remaining employees are all 1099 independent contractors for whom the withholding of payroll taxes is not required. However, upon information and belief, the remaining employees were all W2 employees as recently as March 2025. Absent evidence that the employees are truly independent contractors, the Debtors should be required to account for and pay postpetition payroll taxes.

### CONCLUSION

For the reasons stated above, the United States respectfully requests that the Court deny the Amended Motion. The United States reserves the right to supplement

11

this objection or raise additional issues, arguments, or objections in connection with any hearing on the Amended Motion or in response to any revised proposed order.

Respectfully submitted this 9th day of June, 2025.

> DANIEL P. BUBAR
> Acting United States Attorney
>
> */s/ Benjamin J. Higgins*
> BENJAMIN J. HIGGINS
> Attorney for the IRS
> Assistant United States Attorney
> Civil Division
> 150 Fayetteville Street, Suite 2100
> Raleigh, North Carolina 27601
> Telephone: (919) 856-4043
> Email: benjamin.higgins2@usdoj.gov
> Massachusetts Bar # 690969

# CERTIFICATE OF SERVICE

I do hereby certify that I have this 9th day of June, 2025, served a copy of the foregoing upon the below-listed parties electronically and/or by placing a copy of the same in the U.S. Mail, addressed as follows:

Headway Workforce Solutions, Inc.
3100 Smoketree Court, Ste 900
Raleigh, NC 27604

**Served by CM/ECF system:**

Kirk B. Burkley, Harry W. Greenfield, Brent J. Lemon, Gwenyth A. Ortman
*Attorneys for Debtors*

Jason L. Hendren, Rebecca Redwine Grow, Lydia C. Stoney
*Attorneys for the Debtors*

Brian C. Behr
*Bankruptcy Administrator*

Ciara L. Rogers, Jennifer B. Lyday
*Attorneys for the Unsecured Creditors Committee*

All other parties that have filed a notice of appearance.

    DANIEL P. BUBAR
    Acting United States Attorney

    */s/ Benjamin J. Higgins*
    BENJAMIN J. HIGGINS
    Attorney for the IRS
    Assistant United States Attorney
    Civil Division
    150 Fayetteville Street, Suite 2100
    Raleigh, North Carolina 27601
    Telephone: (919) 856-4043
    Email: benjamin.higgins2@usdoj.gov
    Massachusetts Bar # 690969