**SO ORDERED.**

**SIGNED this 1 day of July, 2025.**

_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Consolidated at |
| | ) | CASE NO. 25-01682-5-JNC |
| HEADWAY WORKFORCE | ) | |
| SOLUTIONS, INC., *et al.*[1], | ) | CHAPTER 11 |
| | ) | |
| DEBTORS. | ) | |

**CONSENT ORDER (I) AUTHORIZING AND APPROVING BIDDING AND SALE PROCEDURES WITH RESPECT TO THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) SCHEDULING AN AUCTION AND SALE HEARING, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of (a) an order (this "Bidding Procedures Order"),

(i) authorizing and approving the bidding procedures attached hereto as **Exhibit A** (the "Bidding

---

[1] The Debtors in this chapter 11 case, together with the last four digits of the Debtors' federal tax identification number, are: Staffing 360 Solutions, Inc. (0859), Monroe Staffing Services, LLC (1204), Lighthouse Placement Services, Inc. (8093), Headway Workforce Solutions, Inc. (4871), and Key Resource, Inc. (9495).

Procedures")[2] in connection with the "Sale") of the computers and laptops and all client facing data related to  the DIP Lender's affiliate, Noor Staffing Group, LLC's ("NSG")  new contracts/agreements with the Debtors' former customers stored within or related to the Headway Connect and Avionte software programs and any assets ancillary thereto (collectively, the "Primed Assets"),[3] (ii) establishing certain dates and deadlines for the sale process, including scheduling an auction of the Primed Assets (the "Auction"), if necessary, in accordance with the Bidding Procedures, and the hearing with  respect to the approval of the Sale (the "Sale Hearing"), (iii) approving the form and manner of  notice of the Auction, if any, the Sale and the Sale Hearing, attached hereto as **Exhibit B** (the  "Sale Notice"), and (iv) granting related relief; and (b) an order (the "Sale Order"), authorizing and approving: (i) the Sale of the Primed Assets to the Stalking Horse Bidder or otherwise Successful Bidder(s), as applicable (the "Purchaser"), free and clear of all liens, claims, interests, and  encumbrances to the extent set forth in the Stalking Horse Agreement or asset purchase agreement(s) with the otherwise Successful Bidder(s), as applicable (the "Asset Purchase Agreement"), and (ii) granting related relief, all as more fully set forth in the Motion; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this  Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having  been provided, and it appearing that no other or further notice need be provided; and this Court  having reviewed the Motion; and this Court having held a hearing on the Motion (the "Bidding Procedures

---

[2] Capitalized terms not defined in this Order shall have the meanings ascribed to them in the Motion, Bidding Procedures or Final DIP Order (as defined herein), as applicable.

[3] The Primed Assets are more fully defined in the Debtors' *Consent Final Order (I) Authorizing Debtors to Obtain Post Petition Financing, (II) Granting Senior Liens and Superpriority Administrative Expense Status, (III) Authorizing use of Cash Collateral, (IV) Granting Limited Relief From the Automatic Stay, and (V) Granting Related Relief* filed contemporaneously with this Bidding Procedures Order (the "Final DIP Order").

Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and it appearing that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS, CONCLUSIONS AND DETERMINATIONS[4]:**

A.    **Bidding Procedures**. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances and designed to maximize the recovery on the Primed Assets, as determined by the Debtors in an exercise of their business judgment.

B.    **Sale Notice**. The Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale and no other or further notice of the Sale shall be required.

C.    **Auction**. The Auction, if held, is necessary to determine whether any entity is willing to enter into a definitive agreement on terms or conditions more favorable to the Debtors and their estates than the Stalking Horse Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    The Motion is granted as provided herein.

2.    All objections to the Motion, to the extent that they have not been withdrawn or resolved are hereby overruled.

---

[4] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## SALE TIMELINE

3.     Bid Deadline. July 17, 2025, at 5:00 p.m. (prevailing Eastern Time) shall be the deadline by which all Qualifying Bids must be actually received by the Debtors and their professionals.

4.     Auction. The Auction, if any, shall be held on July 22, 2025, and commencing at 10:00 a.m.. (prevailing Eastern Time). The Auction shall be held in accordance with the Bidding Procedures (i) at the offices of Bernstein-Burkley, P.C., or (ii) on such other date and/or at such other location or by virtual means as determined by the Debtors in consultation with the DIP Lender and the Creditors' Committee (the "Consultation Parties"). The Debtors shall send written notice of the date, time, and place of the Auction to the Qualified Bidders no later than one (1) business day before such Auction.

5.     Sale Hearing. The Sale Hearing to approve the Sale of the Primed Assets shall be held on July 28, 2025 at 10:00 a.m. (prevailing Eastern Time) via Zoom; provided, however, after consultation with the Consultation Parties, the Sale Hearing may be continued by the Debtors in accordance with the Bidding Procedures, from time to time, without further notice to creditors or parties in interest. You may join the Zoom hearing by using the following link: https://www.zoomgov.com/j/1600924165?pwd=25ueDMveWUL9HcvIiilfRqFLGYhoId.1    with ID 160 092 4165 and Passcode 98101963.

6.     Sale Objection Deadline.  The deadline to file an objection with the Court to the Sale is July 24, 2025 at 5:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline"). Any objections not resolved prior to the Sale Hearing shall be argued at the Sale Hearing or such other time as set by the Court.

7.    The dates and deadlines set forth in this Bidding Procedures Order are subject to modification by the Debtors in accordance with the Bidding Procedures.

### THE BIDDING PROCEDURES

8.    The Bidding Procedures, substantially in the form attached hereto as Exhibit A, are incorporated herein and are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to any proposed Sale. Any party desiring to submit a Bid shall comply with the Bidding Procedures and this Bidding Procedures Order. The Debtors are authorized to take any and all reasonable actions necessary to implement the Bidding Procedures.

9.    The Stalking Horse Bidder shall be entitled to a 3% break-up fee ($45,000) (the "Break-Up Fee") and the Expense Reimbursement, solely for reasonable and documented out of pockets costs and expenses, which shall be subject to review and approval by the Court and which shall not exceed $100,000.  The Break-Up Fee and Expense Reimbursement shall only be payable from the sale proceeds of a closing of an alternative transaction.

10.    Other than with respect to the Break-up Fee and Expense Reimbursement referenced in this Order for the Stalking Horse Bidder,  no person or entity shall be entitled to any expense reimbursement, break-up fee, "topping," termination, or other similar fee or payment in connection with any Sale, and by submitting a bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for expense reimbursement or any fee of any nature, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

### NOTICE OF THE AUCTION, SALE AND SALE HEARING

11.    The Sale Notice, substantially in the form attached hereto as Exhibit B, is hereby approved. No later than three (3) business days after entry of this Bidding Procedures Order, the

Debtors will cause the Sale Notice to be served on the following parties or their respective counsel, if known (collectively, the "Sale Notice Parties"): (i) the Bankruptcy Administrator; (ii) counsel to the DIP Lender; (iii) counsel to the Creditors' Committee; (iv) all parties known by the Debtors to assert a lien on any of the Primed Assets; (v) all persons known or reasonably believed to have asserted an interest in any of the Primed Assets; (vi) the Office of the United States Attorney for the Eastern District of North Carolina; (vii) all taxing authorities having jurisdiction over any of the Primed Assets, including the Internal Revenue Service; (viii) all parties that have filed a notice of appearance and requested notice and service in these proceedings pursuant to Bankruptcy Rule 2002; and (ix) all the Debtors' other known creditors. No other notice is required under the circumstances.

### RELATED RELIEF

12.     Notwithstanding anything to the contrary contained herein or in the Bidding Procedures, (a) the right of the DIP Lender and the Stalking Horse Bidder to credit bid is subject to the provisions of section 363(k) of the Bankruptcy Code, (b) nothing in this Bidding Procedures Order shall be construed as a waiver of, or a finding that the credit bid component of the Stalking Horse Bid satisfies the requirements of, section 363(k) of the Bankruptcy Code, and (c) nothing in this Bidding Procedures Order shall prejudice any party in interest's rights to object to the credit bid component of the Stalking Horse Bid on any basis, or any other party's right to oppose such objection.

13.     All rights of the Debtors, as they may reasonably determine to be in the best interest of their estates, in consultation with the Consultation Parties, to modify the Bidding Procedures (other than all cash bid requirements) in good faith, to further the goal of attaining the highest or otherwise best offer for the Primed Assets, or impose, at or prior to selection of the Successful

Bidder(s), additional customary terms and conditions on the Sale of the Primed Assets, are reserved to the extent set forth in the Bidding Procedures. The Debtors shall provide reasonable notice of any such modification to any Qualified Bidder, including the Stalking Horse Bidder.

14.      In the event of any inconsistencies between this Bidding Procedures Order and the Motion, this Bidding Procedures Order shall govern in all respects. In the event of any inconsistencies between this Bidding Procedures Order and the Bidding Procedures, the Bidding Procedures Order shall govern in all respects.

15.      Notwithstanding the possible applicability of Bankruptcy Rule 6004(h), 6006(d), 7052 or 9014, the terms and conditions of this Bidding Procedures Order shall be immediately effective and enforceable upon its entry.

16.      The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted in this Bidding Procedures Order in accordance with the Motion.

17.      This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Bidding Procedures Order, including, but not limited to, any matter, claim or dispute arising from or relating to the Bidding Procedures, the Stalking Horse Agreement (or the Asset Purchase Agreement with the otherwise Successful Bidder(s)), and the implementation of this Bidding Procedures Order.

**CONSENTED TO BY:**

**HENDREN, REDWINE MALONE, PLLC**

/s/ Jason L. Hendren
Jason L. Hendren (NC State Bar No. 26869)
Rebecca Redwine Grow (NC State Bar No. 37012)
Benjamin E.F.B. Waller (NC State Bar No. 27680)
Lydia C. Stoney (NC State Bar No. 56697)
4600 Marriott Drive, Suite 150
Raleigh, NC 27612

Telephone: (919) 573-1422
Facsimile: (919) 420-0475
Email: jhendren@hendrenmalone.com
        rredwine@hendrenmalone.com
        bwaller@hendrenmalone.com
        lstoney@hendrenmalone.com


*Local Counsel to Debtors*


**BERNSTEIN-BUKRLEY, P.C.**

/s/ Kirk B. Burkley
Kirk B. Burkley, Esq. (WV ID. No. 89511)
kburkley@bernsteinlaw.com
601 Grant Street, 9th Floor
Pittsburgh, PA 15219
Telephone: (412) 456-8100
Facsimile: (412) 456-8135

*Counsel  to the Debtor*

-AND-


**FROST BROWN TODD LLP**

/s/ Jordan S. Blask
Jordan S. Blask (PA State Bar No. 308511)
Jillian Nolan Snider (PA State Bar No. 202253)
Sloane B. O'Donnell (PA State Bar. No. 321295)
501 Grant Street, Suite 800
Pittsburgh, Pennsylvania 15219
Telephone: (412) 513-4300
Facsimile: (412) 513-4299
Email: jblask@fbtlaw.com
        jsnider@fbtlaw.com
        sodonnell@fbtlaw.com

*Counsel for Noor Staffing Group, LLC
& Noor Strategies, Inc.*

-AND-

**WALDREP WALL BABCOCK & BAILEY PLLC**

/s/ Jennifer B. Lyday
Ciara L. Rogers (N.C. Bar No. 42571)
Jennifer B. Lyday (N.C. Bar No. 39871)
Zachary Malnik (N.C. Bar No. 61807)
Waldrep Wall Babcock & Bailey PLLC
3600 Glenwood Avenue, Suite 210
Raleigh, NC 27612
Telephone: 984-480-2005
Email: notice@waldrepwall.com

*Counsel for Official Committee of Unsecured Creditors*

-AND-


**WOMBLE BOND DICKINSON (US) LLP**

/s/ Joel L. Perrell, Jr.
Joel L. Perrell, Jr.
Maryland Fed. Bar No. 25550
100 Light Street, 26th Floor
Baltimore, MD 21202
Telephone: (410) 545-5854
Email: Joel.Perrell@wbd-us.com

/s/ Richard A. Prosser
Richard A. Prosser
N.C. State Bar No. 38443
555 Fayetteville Street, Suite 1100
Raleigh, NC 27601
Telephone: (919) 755-2189
Email: Richard.Prosser@wbd-us.com
Local Civil Rule 83.1(d) Attorney

*Counsel to MidCap Funding IV Trust,*
*as Agent and Lender*


-AND-

/s/ Brian C. Behr
Bankruptcy Administrator (State Bar No. 36616)
U.S. Bankruptcy Administrator's Office
434 Fayetteville Street, Suite 640
Raleigh, North Carolina 27601
(919) 334-3889
Brian_behr@nceba.uscourts.gov

*Bankruptcy Administrator*

-AND-

**DANIEL P. BUBAR**
**Acting United States Attorney**

/s/ Benjamin J. Higgins
BENJAMIN J. HIGGINS (Massachusetts Bar # 690969)
Attorney for the IRS
Assistant United States Attorney
Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, North Carolina 27601
Telephone: (919) 856-4043
Email: benjamin.higgins2@usdoj.gov

*Counsel for the Internal Revenue Service*

-AND-

**KILPATRICK TOWNSEND & STOCKTON LLP**

/s/ Paul M. Rosenblatt
Paul M. Rosenblatt
Kilpatrick Townsend & Stockton LLP
1100 Peachtree Street, Suite 2800
Atlanta, GA 30309
Telephone: 404-815-6500
Email: prosenblatt@ktslaw.com

*Counsel to Jackson Investment Group LLC*

## **EXHIBIT A**

## **BIDDING PROCEDURES**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Consolidated at |
| | ) | CASE NO. 25-01682-5-JNC |
| HEADWAY WORKFORCE | ) | |
| SOLUTIONS, INC., *et al.*[1], | ) | CHAPTER 11 |
| | ) | |
| DEBTORS. | ) | |

**BIDDING PROCEDURES**

On May 5, 2025 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors are maintaining their business and managing their property as debtors in possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

On _____, 2025, the United States Bankruptcy Court for the Eastern District of North Carolina (the "Court") entered an order [D.I. ●] (the "Bidding Procedures Order")[2], which, among other things, authorized the Debtors to solicit bids in accordance with the procedures outlined herein (the "Bidding Procedures") for the sale or disposition (collectively, the "Sale") of the computers and laptops and all client facing data related to the DIP Lender's (defined below) affiliate, Noor Staffing Group, LLC's ("NSG") new contracts/agreements with the Debtors' former customers stored within or related to the Headway Connect and Avionte software programs and any assets ancillary thereto (collectively, the "Primed Assets"). In connection therewith, the Debtors have secured a stalking horse bid from their post-petition financing lender, Noor Strategies, Inc. (the "DIP Lender," and it or its designee in the capacity as stalking horse bidder, the "Stalking Horse Bidder"). Pursuant to the parties' stalking horse asset purchase agreement (the "Stalking Horse Agreement"), the Stalking Horse Bidder, among other things, has committed to a total purchase price of $1,500,000 consisting of (i) a credit bid in the amount of the DIP Loan, currently anticipated to be up to a maximum principal amount of $1,358,000 plus interest and fees and (ii) cash consideration in an amount up to the total purchase price of $1,500,000(collectively, the "Stalking Horse Bid").

The Bidding Procedures set forth the process by which the Debtors are authorized to solicit the highest or otherwise better bid for the Primed Assets culminating in an auction (the "Auction") if competing Qualifying Bids (as defined below) are received. The Sale is contemplated to be

---

[1] The Debtors in this chapter 11 case, together with the last four digits of the Debtors' federal tax identification number, are: Staffing 360 Solutions, Inc. (0859), Monroe Staffing Services, LLC (1204), Lighthouse Placement Services, Inc. (8093), Headway Workforce Solutions, Inc. (4871), and Key Resource, Inc. (9495).

[2] Capitalized terms not defined herein are used as defined in the Bidding Procedures Order.

implemented pursuant to the terms and conditions of either (a) the Stalking Horse Agreement, as the same may be amended pursuant to the terms thereof, or (b) such other applicable asset purchase agreement upon the receipt of a Successful Bid (as defined herein) that the Debtors have determined in their business judgment is the best or highest bid in accordance with these Bidding Procedures.

1.    **Participation Requirements**.

Any person or entity (other than the Stalking Horse Bidder) that wishes to participate in the bidding process for the Primed Assets (each, a "Potential Bidder") must first become a "Qualifying Bidder" in the reasonable discretion of the Debtors after consultation with the Consultation Parties (as defined below). In order to become a Qualifying Bidder, and thus being able to conduct due diligence and gain access to the Debtors' confidential electronic data room concerning the Primed Assets (the "Data Room"), a Potential Bidder must submit to the Debtors and their advisors (unless waived by the Debtors):

a.    documentation identifying the interested party, its principals, and the representatives thereof who are authorized to appear and act on their behalf for all purposes regarding the contemplated transaction;

b.    an executed nondisclosure or confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

c.    a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, after consultation with the Consultation Parties, that the interested party has a bona fide interest in consummating a sale transaction; and

d.    sufficient information, as determined by the Debtors, after consultation with the Consultation Parties, to allow the Debtors to determine that the interested party has, or can obtain, the financial wherewithal and any required internal corporate, legal or other authorizations to close a sale transaction, including, but not limited to, current audited financial statements of the interested party (or such other form of financial disclosure acceptable to the Debtors in their discretion).

2.    **Due Diligence**

The Debtors will provide any Qualifying Bidder with reasonable access to the Data Room and any other additional information that the Debtors believe to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to counsel for the Debtors. The due diligence period shall extend through and including the Bid Deadline.

3.    **Bid Requirements**

Other than in the case of the Stalking Horse Bid, to be deemed a "Qualifying Bid," a bid must be received from a Qualifying Bidder on or before the Bid Deadline and satisfy each of the

2

following requirements (each, a "<u>Bid Requirement</u>"):

    a.  be in writing;

    b.  fully disclose the identity of the Qualifying Bidder and provide the contact information of the specific person(s) whom the Debtors or their professionals should contact in the event that the Debtors have any questions or wish to discuss the bid submitted by the Qualifying Bidder;

    c.  set forth the purchase price of no less than $1,745,000 to be paid by such Qualifying Bidder;

    d.  does not propose payment in any form other than cash (except as otherwise expressly set forth in the Bidding Procedures);

    e.  state the liabilities proposed to be paid or assumed by such Qualifying Bidder;

    f.  specify the Primed Assets that are included in the bid and state that such Qualifying Bidder offers to (i) purchase the Primed Assets, or a number or combination of the Primed Assets, and (ii) assume liabilities, upon substantially the same terms as, or terms more favorable to the Debtors and their estates than, the terms set forth in the Stalking Horse Agreement;

    g.  be accompanied by an asset purchase agreement (a "<u>Amended Agreement(s)</u>") marked to reflect any variations from the Stalking Horse Agreement;

    h.  contain such financial and other information to allow the Debtors to make a reasonable determination, after consultation with the Consultation Parties, as to the Qualifying Bidder's financial and other capabilities to close the transactions contemplated by the Amended Agreement.

    i.  a commitment to close the transactions contemplated by the Amended Agreement by the latter of July 31, 2025, or within seven (7) days after the Sale Order becomes a Final Order;

    j.  except to the extent submitted as part of the Stalking Horse Bid, not request or entitle such Qualifying Bidder to any break-up fee, termination fee, expense reimbursement or similar type of fee of payment;

    k.  not contain any contingencies of any kind, including, without limitation, contingencies related to financing, internal approval or due diligence;

    l.  provides for the Qualifying Bidder to serve as a backup bidder (the "<u>Back-Up Bidder</u>") if the Qualifying Bidder's bid is the next highest and best bid (the "<u>Back-Up Bid</u>") after the Successful Bid, in accordance with the terms of the Amended Agreement;

m. provides a good faith cash deposit (the "<u>Deposit</u>") in an amount equal to ten percent (10%) of the purchase price provided for in the Amended Agreement (or such additional amount as may be determined by the Debtors in their reasonable discretion and in consultation with the Consultation Parties); and

n. provides that the Deposit shall be forfeited to the Debtors in the event of the Qualifying Bidder's breach of, or failure to perform under, the Amended Agreement, without prejudice to any and all other rights and remedies of the Debtors.

A bid from a Qualifying Bidder satisfying all of the above requirements, as determined by the Debtors, in consultation with the Consultation Parties, shall constitute a Qualifying Bid. The Debtors reserve the right to work with any Qualifying Bidder in advance of the Auction to cure any deficiencies in a bid that is not initially deemed a Qualifying Bid.

Each Qualifying Bidder submitting a bid shall be deemed to: (a) acknowledge and represent that it is bound by all of the terms and conditions of the Bidding Procedures; and (b) have waived the right to pursue a substantial contribution claim under section 503 of the Bankruptcy Code related in any way to the submission of its bid, the Bidding Procedures, and the Sale.

4. **<u>Bid Deadline</u>**

A Qualifying Bidder (other than any Stalking Horse Bidder) that desires to make a bid shall deliver a written copy of its bid Bidding Procedures Notice Parties and the Consultation Parties so as to be received on or before July 17, 2025 at 5:00 p.m. (ET) (the "<u>Bid Deadline</u>"); provided that the Debtors may extend the Bid Deadline without further order of the Court, after consultation with the Consultation Parties. **Any party that does not submit a bid by the Bid Deadline will not be allowed to (a) submit any offer after the Bid Deadline, or (b) participate in the Auction, unless the Debtors, after consultation with the Consultation Parties, allow otherwise.**

5. **<u>No Qualifying Bids</u>**

If no timely Qualifying Bids other than the Stalking Horse Bid are submitted on or before the Bid Deadline, the Debtors shall not hold an Auction and shall request at the Sale Hearing that the Court approve the Stalking Horse Agreement and the transactions contemplated thereunder.

6. **<u>The Auction</u>**

If one or more Qualifying Bids are received, the Auction shall be held on July 22, 2025 at 10:00 a.m. (ET) (i) at the offices of Bernstein-Burkley, P.C., or (ii) on such other date and/or at such other location or by virtual means as determined by the Debtors in consultation with the Consultation Parties. The Auction shall be governed by the following procedures:

a. only the Qualifying Bidders with Qualifying Bids (the "Auction Bidders"), shall be entitled to make any subsequent bids at the Auction;

b. each Auction Bidder must attend the Auction, either on its own behalf or through a duly authorized representative with power to bind such Auction Bidder at the Auction;

c. only the Debtors, the Auction Bidders, the Consultation Parties together with their professionals to each of the foregoing parties, may attend the Auction;

d. the Debtors and their professionals shall direct and preside over the Auction, which shall be transcribed;

e. the Auction Bidders shall confirm on the record that they have not engaged in any collusion with respect to their bid, the Bidding Procedures, the Auction or the Sale;

f. the Auction may include separate discussions or negotiations with any of the Auction Bidders, but all bids shall be made on the record and in the presence of all Auction Bidders;

g. the Auction Bidders shall have the right to make additional modifications to the Amended Agreement in conjunction with each Qualifying Bid submitted in each round of bidding during the Auction, provided that (i) any such modifications on an aggregate basis and viewed in whole, shall not, in the Debtors' discretion, in consultation with the Consultation Parties, be less favorable to the Debtors and their estates than the terms of the Stalking Horse Agreement, as applicable, and (ii) each Qualifying Bid shall constitute an irrevocable offer and shall be binding on the Auction Bidder submitting such bid until such party shall have submitted a subsequent Qualifying Bid at the Auction or the conclusion of the Sale Hearing, whichever occurs sooner, unless such bid is selected as the Successful Bid or the Back-Up Bid, which shall remain binding as provided for herein;

h. upon the conclusion of the Auction, the Debtors shall determine, in consultation with the Consultation Parties, subject to Court approval, the offer or offers for the Primed Assets that is or are the highest or otherwise best from among the Qualifying Bids submitted at the Auction (the "Successful Bid(s)"). The bidder(s) submitting such Successful Bid(s) shall become the "Successful Bidder(s)," and shall have such rights and responsibilities of the purchaser as set forth in the applicable Amended Agreement(s). The Debtors may, in their sole discretion, designate one or more Back-Up Bids (and the corresponding Back-Up Bidder(s)) to purchase the Primed Assets in the event that the Successful Bidder(s) do not close the Sale(s); and

i. prior to the Sale Hearing, the Successful Bidder(s) and any Back-Up Bidder(s) shall complete and execute all agreements, contracts, instruments and other documents

evidencing and containing the terms and conditions upon which the Successful Bid was made.

7.    **The Sale Hearing**

The Successful Bid(s) and any Back-Up Bid(s) (or if no Qualifying Bid other than the Stalking Horse Bid is received, then the Stalking Horse Bid, as the Successful Bid will be subject to approval by the Court. The Sale Hearing to approve the Successful Bid(s) and any Back-Up Bid(s) shall take place on July 28, 2025 at 10:00 a.m. (ET), via Zoom, subject to Court availability. After consultation with the Consultation Parties, the Sale Hearing may be adjourned by the Debtors from time to time without further notice to creditors or other parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing, or by filing a hearing agenda or notice on the docket of the chapter 11 cases.

You may join the Zoom hearing by using the following link: https://www.zoomgov.com/j/1600924165?pwd=25ueDMveWUL9HcvIiilfRqFLGYhoId.1 with ID 160 092 4165 and Passcode 98101963.

8.    **Reservation of Rights**

Notwithstanding any of the foregoing, the Debtors and their estates reserve the right, after consultation with the Consultation Parties, to modify the Bidding Procedures at, prior to, or during the Auction, including, without limitation, to extend the deadlines set forth herein, modify bidding increments, waive terms and conditions set forth herein with respect to any or all potential bidders (including, without limitation, the Bid Requirements), impose additional terms and conditions with respect to any or all Potential Bidders, adjourn or cancel the Auction at or prior to the Auction, and adjourn the Sale Hearing.

## **EXHIBIT B**

**SALE NOTICE**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**RALEIGH DIVISION**

IN RE:                                       )      Consolidated at
                                             )      CASE NO. 25-01682-5-JNC
HEADWAY WORKFORCE                            )
SOLUTIONS, INC., *et al.*[1],                )      CHAPTER 11
                                             )
        DEBTORS.                             )

**NOTICE OF SALE, BIDDING PROCEDURES, POTENTIAL**
**AUCTION, AND SALE HEARING**

PLEASE TAKE NOTICE that, on May 5, 2025 (the "Petition Date"), the above captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of North Carolina (the "Court"), commencing these chapter 11 cases.

PLEASE TAKE FURTHER NOTICE that, on _____, 2025, the Debtors filed a  motion [D.I. [●]] (the "Bidding Procedures Motion") seeking entry of (a) an order (the "Bidding Procedures Order"), (i) authorizing and approving bidding procedures (the "Bidding Procedures") in connection with the sale or disposition (the "Sale") of the computers and laptops and all client facing data related to the DIP Lender's affiliate, Noor Staffing Group, LLC's ("NSG") new contracts/agreements with the Debtors' former customers stored within or related to the Headway Connect and Avionte software programs and any assets ancillary thereto (collectively, the "Primed Assets"), (ii) establishing certain dates and deadlines for the sale process, including scheduling an auction of the Primed Assets (the "Auction"), if applicable, in accordance with the Bidding Procedures, and the hearing with respect to the approval of the Sale (the "Sale Hearing"), (iii) approving the form and manner of notice of the Auction, if any, the Sale and the Sale Hearing and (iv) granting related relief; and (b) an order (the "Sale Order") authorizing and approving: (i) the Sale of the Primed Assets to the Stalking Horse Bidder or otherwise Successful Bidder(s), as applicable (the "Purchaser"), free and clear of all liens, claims, interests, and encumbrances to the extent set forth in the Stalking Horse Agreement or asset purchase agreement(s) with the otherwise Successful Bidder(s), as applicable (the "Asset Purchase Agreement"), and (ii) granting related relief.

PLEASE TAKE FURTHER NOTICE that, on _____, 2025, the Court entered the Bidding Procedures Order [D.I. [●]], approving, among other things, the Bidding Procedures, which establish key dates and times relating to the Sale and the Auction. All interested

---

[1] The Debtors in this chapter 11 case, together with the last four digits of the Debtors' federal tax identification number, are: Staffing 360 Solutions, Inc. (0859), Monroe Staffing Services, LLC (1204), Lighthouse Placement Services, Inc. (8093), Headway Workforce Solutions, Inc. (4871), and Key Resource, Inc. (9495).

bidders should carefully read the Bidding Procedures Order and the Bidding Procedures in their entirety.

## **Contact Persons for Parties Interested in Submitting a Bid**

The Bidding Procedures set forth in detail the requirements for submitting Qualifying Bids, and any person interested in making an offer to purchase the Primed Assets must comply strictly with the Bidding Procedures. Only Qualifying Bids that are submitted in accordance with the Bidding Procedures will be considered by the Debtors. Any persons interested in making an offer to purchase the Primed Assets should contact: Kirk B. Burkley, Bernstein-Burkley, P.C., 601 Grant Street, 9th Floor, Pittsburgh, PA 15219-1900, kburkley@bernsteinlaw.com, 412-456-8100.

## **Important Dates and Deadlines**

1.      **Bid Deadline**. The deadline to submit a Qualified Bid is July 17, 2025 at 5:00 p.m. (prevailing Eastern Time).

2.      **Auction**. If two or more Qualifying Bids (other than the Stalking Horse Bid) are received by the Bid Deadline, the Debtors will conduct the Auction, which shall take place on July 22, 2025 commencing at 10:00 a.m. (prevailing Eastern Time) (i) at the offices Bernstein-Burkley, P.C., 601 Grant Street, 9th Floor, Pittsburgh, PA 15219-1900 or (ii) on such other date and/or at such other location or by virtual means as determined by the Debtors in consultation with the Consultation Parties. If the Debtors do not receive any Qualifying Bids (other than the Stalking Horse Bid), the Debtors will not conduct the Auction and will designate the Stalking Horse Bid as the Successful Bid. If the Debtors receive only one timely Qualifying Bid other than the Stalking Horse Bid, the Debtors will not hold an Auction and the Qualifying Bid will be deemed the Successful Bid, with the Stalking Horse Bid designated as the Back-Up Bid.

3.      **Objection Deadlines**. The deadline to file an objection with the Court to the consummation of the Sale is July 24, 2025 at 5:00 p.m. (prevailing Eastern Time) (the "Sale Objection Deadline"). Any objections not resolved prior to the Sale Hearing shall be argued at the Sale Hearing or such other time as set by the Court.

4.      **Sale Hearing**. The Sale Hearing to consider the proposed Sale will be held before the Honorable Joseph N. Calloway on July 28, 2025 at 10:00 a.m. (prevailing Eastern Time), via Zoom, or such other date as determined by the Court, at the United States Bankruptcy Court for the Eastern District of North Carolina, U.S. Bankruptcy Court, Century Station Federal Building, 300 Fayetteville St., 4th Floor, Raleigh, NC 27601-1799.

5.      You may join the Zoom hearing by using the following link: https://www.zoomgov.com/j/1600924165?pwd=25ueDMveWUL9HcvIiilfRqFLGYhoId.1   with ID 160 092 4165 and Passcode 98101963.

## **Filing Objections**

Objections to the Sale or conduct of the Auction, if any, must (i) be in writing and specify the nature of such objection, (ii) comply with the Bankruptcy Code, the Bankruptcy Rules and all orders of the Court entered in the chapter 11 cases, (iii) be filed with the Court by the Sale Objection Deadline, and (iv) be served upon the following parties (collectively, the "Objection Notice Parties"): (a) counsel to the Debtors: Hendren, Redwine Malone, PLLC, 4600 Marriott Drive, Suite 150, Raleigh, NC 27612, Attn: Rebecca Redwine (rredwine@hendrenmalone.com) and Bernstein-Burkley, P.C., 601 Grant Street, 9th Floor, Pittsburgh, PA 15219-1900, Attn: Kirk B. Burkley (kburkley@bernsteinlaw.com) (b) counsel to the DIP Lender: Kirschbaum Nanney Keenan & Griffin, P.A., 3714 Benson Drive, Raleigh, NC 27609, Attn: Pamela P. Keenan (pkeenan@kirschlaw.com) and Frost Brown Todd LLP, 501 Grant Street, Suite 800, Pittsburgh, PA 15219, Attn: Jordan S. Blask (jblask@fbtlaw.com) and Jillian Nolan Snider (jsnider@fbtlaw.com); (d) counsel to the Creditors' Committee: Walldrep Wall Babcock & Bailey PLLC, 3600 Glenwood Avenue, Suite 210, Raleigh, NC 27612, Attn: Ciara L. Rogers (crogers@waldrepwall.com) and Jennifer Lyday (jlyday@waldrepwall.com); (e) the Bankruptcy Administrator; and (f) any Successful Bidders.

## Consequences of Failing to Timely File an Objection

ANY PARTY WHO FAILS TO MAKE A TIMELY SALE OBJECTION ON OR BEFORE THE SALE OBJECTION DEADLINE OR, SOLELY WITH RESPECT TO OBJECTIONS RELATED TO THE IDENTITY OF THE SUCCESSFUL BIDDER(S) (OTHER THAN THE STALKING HORSE BIDDER), IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY SALE OBJECTION, INCLUDING WITH RESPECT TO THE TRANSFER OF THE PRIMED ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS.

## Sale Free and Clear

The Sale will be free and clear of, among other things, any claim arising from any conduct of the Debtors prior to the closing of the Sale, whether known or unknown, whether due or to become due, whether accrued, absolute, contingent or otherwise, so long as such claim arises out of or relates to events occurring prior to the closing of the Sale. Accordingly, as a result of the Sale, the Purchaser will not be a successor to any of the Debtors by reason of any theory of law or equity, and the Purchaser will have no liability, except as expressly provided in the Purchaser's Asset Purchase Agreement, for any liens, claims, encumbrances and other interests against or in any of the Debtors under any theory of law, including successor liability theories.

## Obtaining Additional Information

Copies of the Bidding Procedures Motion, the Bidding Procedures, the Bidding Procedures Order, the Stalking Horse Agreement and all other documents filed with the Court can be requested by contacting Debtors' Counsel, Kirk B. Burkley, Bernstein-Burkley, P.C., 601 Grant Street, 9th Floor, Pittsburgh, PA 15219-1900, kburkley@bernsteinlaw.com, 412-456-8100.

**END OF DOCUMENT**